# CITY OF CLEVELAND v. CLEVELAND CITY RAILWAY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 255. Argued April 27, 1904.—Decided May 31, 1904.

Where the complainant does not base the contract alleged to have been impaired upon the original ordinance granting the franchise which reserved the power of altering fares but asserts that the contracts impaired resulted from subsequent ordinances which deprived the municipality of exercising the rights reserved in the original ordinance, the Circuit Court has jurisdiction of the suit as one arising under the Constitution of the United States.

The passage by the municipality of an ordinance affecting franchises already granted in prior ordinances amounts to an assertion that the legislative authority vested in it to pass the original ordinance gave it the continued power to pass subsequent ordinances, and it cannot assail the jurisdiction of the Circuit Court on the ground that its action in impairing the contracts which resulted from prior ordinances was not an action by authority of the State.

In view of the continuous confusion, risks and multiplicity of suits, which would result from, and the public interests and vast number of people which would be affected by, the enforcement of an ordinance reducing the rates of fare of street railways, which ordinance the companies claim is unconstitutional as impairing the obligation of the contracts resulting from the ordinances granting the franchises, a court of equity has jurisdiction of an action to enjoin the enforcement of the ordinance, especially when the ordinance affects only a part of the system and would engender the enforcement of two rates of fare over the same line leading to dangerous consequences.

In this case it was held that the consolidated ordinance of February, 1885, of the city of Cleveland, and ordinances thereafter passed by the municipality and accepted by the companies, constituted such binding contracts in respect to the rate of fare to be exacted upon the consolidated and extended lines of the railway companies as to deprive the city of its right to exercise the reservations in the original ordinances as to changing the rates of fare; and the ordinance of October 17, 1898, reducing the rate of fare to be charged was void and unconstitutional within the impairment clause of the Constitution of the United States.

THIS suit was brought in the Circuit Court to restrain the

enforcement of an ordinance of the city of Cleveland, passed October, 1898, fixing the rates of fare to be charged by the appellee on a portion of its line of street railroad. .

The bill based the right to relief upon two grounds, that is, a violation of the contract clause of the Constitution of the United States and of the due process clause of the Fourteenth Amendment, the latter because the rates fixed by the ordinance, if enforced, would be confiscatory.

After hearing, a temporary injunction was allowed. The court, in stating its reasons, confined them exclusively to the alleged impairment of the obligations of contracts, and decided that it was unnecessary to consider the rights alleged under the Fourteenth Amendment. 94 Fed. Rep. 385.

Both parties thereupon amended their pleadings, so that upon the face of the record the facts concerning the alleged impairment of contract rights appeared as found by the court in awarding the temporary injunction. The bill as amended, however, also reiterated the facts originally claimed to constitute a violation of the due process clause of the Fourteenth Amendment. The pleadings being thus amended, the complainant moved as follows:

"The above-named complainant, The Cleveland City Railway Company, now comes and moves the court to enter final decree in its favor as prayed for in the amended bill of complaint herein, adjudging the ordinance in said amended bill of complaint described, entitled 'An ordinance to provide for a diminution of the rate of fare under section 7 of an ordinance passed August 25th, 1879, entitled "An ordinance granting a renewal of franchise to the Kinsman Street Railroad Company to reconstruct, maintain and operate its street railroad in and through certain streets of the city of Cleveland,"' passed October 17, 1898, to be null and void and of no effect, in that, as appears by the amended bill of complaint and the admissions of the amended answer herein, said ordinance is in violation of the contract obligations existing between the complainant and the defendant herein, and impairs the contract rights of the

complainant, in violation of the Constitution of the United States.

"Complainant further shows that, upon the amended bill, amended answer and replication it is entitled to the decree without a determination of any of the matters in respect to which issues are raised by the amended answer of the defendant herein."

The court granted this motion for the reasons which it had expressed in the opinion by it delivered on the allowance of the temporary injunction. A final decree was thereupon entered, perpetually enjoining the enforcement of the assailed ordinance. Because of the constitutional question the case was then appealed directly to this court.

*Mr. Newton D. Baker* and *Mr. D. C. Westenhaver* for appellant:

The Circuit Court of the United States had no jurisdiction in this action, both parties being citizens of the State of Ohio, and no Federal question being involved in the controversy.

It is admitted that the power to regulate fares cannot be inferred from a statute conferring upon cities the care, supervision and control of streets, and imposing upon them the duty to keep public highways open, in repair and free from nuisance; and further, that such a power to be conferred at all, must be given by express delegation from the supreme legislative authority of the state to subordinate legislatures. In the case at bar, however, the ordinance of October 17, 1898, which is attacked by its terms, says that it is passed pursuant to a reservation of power contained in the original renewal ordinance of August 25, 1879. The council of the city of Cleveland, in passing the ordinance in issue, relying upon a contractual reservation of the right of further legislation, and not upon any delegation of authority from the legislature of the State, the case falls within the rule laid down by this court in *Hamilton Gas Light Co.* v. *Hamilton City*, 146 U. S. 258, and *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142.

A court of equity did not have jurisdiction of the controversy in this question for any of the reasons assigned in the bill of complaint, it not appearing that the complainants did not have adequate remedy at law, or that there was any danger of irreparable injury or threatened multiplicity of suits. In support of this contention, the doubt expressed by this court in *Detroit* v. *Citizens' Street Railway*, 184 U. S. 379, is urged.

The Circuit Court erred in adjudging that the ordinance of October 17, 1898, was null and void, for the reason that if enforced it would impair the obligation of the contract between the appellant and the appellee.

If it be assumed that the legislature has conferred upon the city of Cleveland the right to regulate fares, this power being conferred for the benefit of the public, can neither be bargained away nor surrendered, but is a governmental power, continuing in its nature, and any limitation upon it arising from the action of the depositary of the power, must be by positive grant, any reasonable doubt with regard thereto being resolved in favor of the continuance of the power. *Owensboro* v. *Water Company*, 191 U. S. 358; *Ruggles* v. *Illinois*, 108 U. S. 526; *Stone* v. *Farmers'*, etc., 116 U. S. 307; *Munn* v. *Illinois*, 94 U. S. 113.

The statutes of Ohio empower municipalities to renew street railroad grants at their expiration for periods not in excess of twenty-five years, and municipalities are expressly prohibited from releasing the grantee of such franchises from any obligation or liability imposed by the terms of their grants during the time for which such grants are made. It is true that in various Ohio cases, the Supreme Court of Ohio, and inferior courts, have inferentially held that upon consolidations new terms may be made involving a change in the liabilities and obligations of the constituent companies of the consolidation; but no final and authoritative decision has been made upon these points by the Supreme Court of Ohio, and on principle the powers of municipalities being strictly con-

strued, no council of a city should be permitted to release grantees of street railroad rights from obligations and liabilities previously imposed, even though the device of an apparent concession of new benefits to the public is adopted to show consideration.

All of the ordinances passed subsequent to the original renewal ordinance of 1879, which are relied upon by the appellee as new contracts, are either silent upon the subject of fares, or else stipulate that the fare to be charged upon the consolidated or extended lines shall in no case *exceed* five cents. This limitation of the maximum rate is not a grant of the right to charge the maximum rate, but is a *pro tanto* limitation, and under the powers reserved in the ordinance of 1879, which are nowhere expressly abandoned or surrendered, such subsequent reference to rates of fare must be deemed a regulation pursuant to the ordinance of 1879, and not a surrender of it. *Zanesville v. Gas Light Co.,* 47 Ohio St. 1; *State v. Cleveland Gas Light & Coke Co.,* 3 C. C. R. 251; *Freeport Water Co. v. Freeport,* 180 U. S. 587; *Danville Water Co. v. Danville,* 180 U. S. 619; *Rogers Park Water Co. v. Fergus,* 180 U. S. 624; *Ruggles v. Illinois,* 108 U. S. 526.

*Mr. William B. Sanders,* for appellee, in this case and in No. 256, argued simultaneously herewith:

The Circuit Court had jurisdiction; the complainant claiming to have contracts with the defendant which the latter had attempted to impair by municipal legislation passed under power delegated by the legislature of the State. Ohio Statutes, §§ 2501, 2502. These ordinances, when accepted, became contracts and cannot be annulled or amended without the consent of both parties. *Railway Co. v. Smith,* 29 Ohio St. 292; *Cincinnati St. Ry. Co. v. Carthage,* 36 Ohio St. 634; *Columbus v. Columbus St. Ry. Co.,* 45 Ohio St. 104; *Citizens' Railway Co. v. Citizens' St. Ry. Co.,* 166 U. S. 557.

It is not essential to Federal jurisdiction, in enforcement of the guaranties of the Fourteenth Amendment, that there

should be a valid contract or that the impairment or deprecia-
tion should really be effected through legislative or other ac-
tion of the State; but it is sufficient if these grounds of suit
are claimed in good faith and the contention is not wholly
destitute of merit. *Citizens' R. R. Co.* v. *Citizens' St. Ry. Co.,
supra; Illinois R. R. Co.* v. *Chicago,* 176 U. S. 646; *Yazoo &
M. V. R. R. Co.* v. *Adams,* 180 U. S. 1; *Illinois Cent. R. R. Co.*
v. *Adams,* 180 U. S. 28.

In *Detroit* v. *Detroit Citizens' St. Ry. Co.,* 184 U. S. 368, a
bill in essential respects similar to those in the cases at bar was
sustained; and that a bill in equity, irrespective of diverse
citizenship, will lie to protect complainant against the impair-
ment of contract right or the taking of its property without
due process of law, has been repeatedly recognized by this
court. *C. M. & St. P. Ry. Co.* v. *Minnesota,* 134 U. S. 460;
*Smyth* v. *Ames,* 169 U. S. 446.

The contention that the Circuit Court was without juris-
diction because the ordinances attacked were not passed under
delegated power, in that the power sought to be exercised
had been reserved in an original ordinance, is without merit.
*Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558;
*American Water Works & Guaranty Co.* v. *Home Water Co.,*
115 Fed. Rep. 171.

The bills present cases clearly within the jurisdiction of a
court of equity. *Detroit* v. *Detroit Citizens' St. Ry. Co., supra;*
and *Smyth* v. *Ames, supra.*

Equity may properly maintain a bill seeking to have a law
of the State declared void as one which in practical operation
impairs contracts. *Chicago, M. & St. Paul Ry. Co.* v. *Minne-
sota, supra.*

The ordinances complained of clearly impair the contract
obligations of the city of Cleveland.

It is clear that the reserved power of subsequent legislative
regulation is not an "obligation" or "liability," but it has been
long settled by the law of Ohio that this provision does not
prevent modification at any time of contracts between street

railway companies and cities. *Clement* v. *Cincinnati*, 16 Wkly. L. Bull. 335. And see also 19 Wkly. L. Bull. 74; *Cincinnati* v. *Street Railway Co.*, 31 Wkly. L. Bull. 308; *Woodson* v. *Murdock*, 22 Wall. 351.

If the ordinances consenting to extension, consolidation, and changes of motive power, are treated as renewals of the ordinance of 1879, there is no merit in the contention of counsel that such renewals were beyond the power of the municipal council because made before the expiration of existing grants.

"Renewals may be made before the expiration of the original grant." *State ex rel.* v. *East Cleveland Railroad Co.*, 6 C. C. R. 318, affirmed 27 Wkly. L. Bull. 64; *Cincinnati* v. *Cincinnati St. Ry. Co.*, 31 Wkly. L. Bull. 308.

The several resolutions of the city council, approving the various consolidations made, were passed in pursuance of § 3443 of the Revised Statutes.

A contract to charge "not more than five cents" confers the right for the term to charge five cents. *Detroit* v. *Detroit Citizens' Railway Co.*, *supra*.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

As will appear by the statement just made, whilst two grounds under the Constitution of the United States were asserted in the bill as originally filed and as amended, the cause was in effect submitted to the court for decree upon one of the constitutional grounds alone—that is, the alleged impairment of the obligations of certain asserted contracts. Conceding that the alleged rights based on the due process clause were not waived, but were merely reserved for future action, it is manifest that the motion of the complainant for decree on the face of the pleadings confined the controversy exclusively to the alleged contract rights, and we shall therefore treat the case as if it solely involved such rights. The facts necessary to a determination of the question of contracts

and their impairment appear on the face of the pleadings, and may be summarized as follows:

On August 25, 1879, an ordinance was passed by the city council of Cleveland, granting to the Kinsman Street Railroad Company, an Ohio corporation, a renewal franchise for twenty-five years from September 20, 1879, to reconstruct, maintain and operate its street railroad in and through certain streets of the city of Cleveland. The ordinance was duly accepted. A section of the ordinance was as follows:

"SEC. 7. Said company shall not charge more than five cents fare each way for one passenger over the whole or any part of its line, but said company may charge a reasonable compensation for carrying packages; the council, however, reserves to itself the right to hereafter increase or diminish the rate of fare as it may deem justifiable and expedient."

In 1880 another Ohio corporation, known as the Woodland Avenue Railway Company, then operating a line of street railroad under several grants from the city of Cleveland, became, by purchase, the owner of the Kinsman Street Railroad, and thereafter operated such road.

The Woodland Avenue Railway Company in May, 1883, was granted by ordinance the right to construct an extension of its line, and provision was made in the ordinance for a charge of one fare over the entire line, including the extension. The extension was built and operated as required by the ordinance.

At the time the ordinance extending the Woodland Avenue road just referred to was passed there was in existence another Ohio corporation, styled the West Side Street Railroad Company, operating a line of railroad in Cleveland under a franchise granted by the city council of Cleveland for a term of twenty-five years from February 10, 1883. This road was independent of the Woodland Avenue Railway Company, and operated its cars chiefly upon the west side of the Cuyahoga River; the Woodland Avenue line being upon the east side. There was no exchange of traffic between the roads by way

of transfers, and each was charging a fare of five cents over its line. In 1885, with this condition of affairs existing, the roads named were consolidated as the Woodland Avenue and West Side Street Railroad Company, and the consolidated company became vested with all the property, rights and privileges of the two constituent companies. The ordinance, the acceptance of which accomplished such consolidation, was as follows:

"An ordinance to fix the terms and conditions upon which the railway tracks of the West Side Street Railroad Company and the tracks of the Woodland Avenue Railway Company and said companies may be consolidated.

"SEC. 1. Be it ordained by the city council of the city of Cleveland, That the consent of the city is hereby given to the consolidation of the West Side Street Railroad Company and the Woodland Avenue Railway Company on the following conditions:

"The said consolidated company to carry passengers through without change of cars by running all cars through from the workhouse on the Woodland Avenue Railway to the point on the West Side Street Railroad where Condon avenue crosses Lorain street, and, when practicable in the judgment of the council, to do likewise on the branches of the consolidated line, and that for a single fare from any point to any point on the line or branches of the consolidated road no greater charge than five cents shall be collected; and that tickets at the rate of eleven for fifty cents or twenty-two for one dollar shall at all times be kept for sale on the cars by conductors.

"SEC. 2. Said consolidated company shall be subject to all the liabilities, conditions and penalties to which said several companies are liable; and said consolidated company and its tracks shall at all times be subject to the control, regulation and supervision of the city council, to the same extent that the same several companies and their tracks are now liable.

"SEC. 3. This ordinance shall take effect and be in force from and after its passage and legal publication, the filing with

the city of a written agreement accepting and agreeing to the
terms thereof, signed by the proper persons for the companies
consolidated, and the payment to the city of the expenses of
printing and publishing this ordinance.

"Passed February 16, 1885."

By ordinance dated April 8, 1887, duly accepted, the Wood-
land Avenue and West Side Street Railroad Company was
authorized to lay an additional track and extend its line of
railroad.  The first section of the ordinance reads as follows:

"SEC. 1. Be it ordained by the city council of the city of
Cleveland, That the Woodland Avenue and West Side Street
Railroad Company, its successors and assigns, be and the
same is hereby authorized and empowered to lay an additional
track in Franklin avenue, between Pearl street and the westerly
line of Franklin circle, and to extend its line of railroad to
Franklin avenue from the westerly line of Franklin circle to
Kentucky street, as a single track railroad, and connect with
the tracks of said company in Kentucky street, as shown on a
plan accompanying the petition of said railroad company and
referred to the board of improvements March 14, 1887, and to
equip and operate said extension as herein provided, but on
the express condition that no increase of fare shall be charged
by said railroad company on any part of its main line or on said
extension, and so that but one fare, not to exceed five cents,
shall be charged between any points on said company's main
line or extension, including the extension herein granted, and
said company shall sell tickets on its cars as follows: Eleven (11)
tickets for fifty cents, and twenty-two (22) for one dollar.
And the right herein granted shall terminate with the present
grant of the main line, to wit, on the 10th day of February,
1908."

By ordinance dated August 12, 1887, duly accepted, the
Woodland Avenue and West Side Street Railroad Company
was authorized to build, equip and operate an extension of its
road therein provided for, the first section containing a pro-
vision as to rates of fare and the time of expiration of the right

granted, similar to that contained in the first section of the ordinance of April 8, 1887, above quoted. The said railroad company also duly accepted an ordinance, passed on or about June 20, 1892, by the city council of Cleveland, relating to the laying of an additional track on Kinsman street, and the first section of the ordinance contained a similar provision to that embodied in the two ordinances last referred to, respecting rates of fare and the time when the right granted should expire.

Prior to May, 1893, besides the Woodland Avenue and West Side Street Railroad Company, there existed in Cleveland a railroad corporation known as the Cleveland City Cable Railway Company. This corporation, as the successor in right of previous corporations, operated two street railroad lines, one by horse power and the other by cable, and each of said lines charged a cash fare of five cents.

In June, 1893, with the approval of the common council of the city of Cleveland, the Cleveland City Cable Railway Company and the Woodland Avenue and West Side Street Railroad Company became a consolidated corporation, under the name of the Cleveland City Railway Company, the complainant in this cause. By the consolidation it was provided that the lines should be operated as one system, that proper transfers should be issued, and that but one fare should be charged for a continuous passage upon any portion of the consolidated lines.

It is admitted that, as the result of the various ordinances and consolidations above referred to, the corporations ceased to charge a cash fare of five cents for riding over the roads embraced in the Kinsman street railroad ordinance of 1879, and on the other roads which had been at that time in existence; and, on the contrary, in consequence of the ordinances and authorized consolidations, there was charged only five cents for a ride over the whole system or systems, and tickets were sold and transfers issued as provided in the various ordinances. It is not asserted that the corporations at any time failed to perform the additional obligations imposed upon them by the various ordinances passed subsequently to 1879.

On October 17, 1898, an ordinance was adopted by the council of the city of Cleveland, reading as follows:

"An ordinance to provide for a diminution of the rate of fare under section 7 of an ordinance passed August 25, 1879, entitled 'An ordinance granting a renewal of franchise to the Kinsman Street Railroad Company to reconstruct, maintain and operate its street railroad in and through certain streets of the city of Cleveland.'

"Whereas, the city council did, on the 25th day of August, 1879, pass an ordinance entitled 'An ordinance granting a renewal of franchise to the Kinsman Street Railroad Company to reconstruct, maintain and operate its street railroad in and through certain streets of the city of Cleveland,' by which ordinance said Kinsman Street Railroad Company, its successors, and assigns, were authorized to reconstruct, maintain and operate its double-track street railroad, commencing on Superior street at the intersection of Water street, thence to and around the southwest corner of Monumental square to Ontario street; thence through Ontario street to and through a portion of Broadway street to Woodland avenue (formerly Kinsman street), thence through said avenue to Madison avenue, subject to certain conditions and limitations; and

"Whereas, it was ordained, as part of these conditions and limitations (section 7), that 'said company shall not charge more than five cents fare each way for one passenger over the whole or any part of its line, but said company may charge a reasonable compensation for carrying packages; the council, however, reserves to itself the right to hereafter increase or diminish the rate of fare as it may deem justifiable and expedient;' and

"Whereas, the council does now deem justifiable and expedient a diminution of the rate of fare, therefore—

"SEC. 1. Be it ordained by the city council of the city of Cleveland, That the rate of fare for a single continuous passage over the lines, and all extensions thereof, operated under the aforesaid grant to the said Kinsman Street Railroad Company,

be, and is hereby, fixed at four (4) cents cash fare over the whole or any part thereof.

"SEC. 2. For the better accommodation of the public any person, company or corporation operating said line of railway under said grant shall at all times keep on sale on the cars, when in operation, tickets good for a single continuous passage over said lines and all extensions thereof at the rate of seven tickets for twenty-five cents.

"SEC. 3. This ordinance shall take effect and be in force from and after its passage and legal publication."

And this ordinance is the one complained of, the enforcement of which the final decree below enjoined.

Bearing the facts above stated in mind, we come to consider the merits of the case. Before proceeding, however, to do so we must dispose of contentions made below and reiterated in the argument in this court, concerning the jurisdiction of the Circuit Court.

The alleged want of jurisdiction in the Circuit Court is based upon two propositions, first, that the suit is not one arising under the Constitution of the United States; and, second, that the subject matter of the suit is not within the cognizance of a court of equity.

The argument in support of the first contention presents a twofold aspect: (a) That as the reduction of fares provided in the assailed ordinance only related to carriage over that portion of the consolidated road which was formerly owned by the Kinsman Street Railroad Company, no impairment of the obligation of a contract could or did arise, because in the ordinance of 1879 there was an express reservation of the right of the city to alter the rates of fare as to the road affected by that ordinance.

The proposition is without merit. It assumes a false issue and upon that erroneous premise, the challenge to the jurisdiction is based. The complainant did not rely upon a contract arising from the ordinance of 1879, but upon the contracts alleged to have resulted from the subsequent ordinances, which

it was in substance asserted had deprived the city of the power to exercise the right reserved in the ordinance of 1879, and it was these subsequent contracts which it was contended were impaired by the assailed ordinance.

(b) That there was no jurisdiction, even although the complainant relied upon contracts arising from the ordinances adopted subsequent to that of 1879. To constitute the impairment of a contract within the sense of the Constitution, it is correctly argued, requires that some subsequent action taken by the State or under its authority should have been given effect as against the contract. The argument is that as there had not been delegated by the State of Ohio to the city of Cleveland independent authority to reduce rates of fares on street railroads, and as the power asserted by the assailed ordinance was based solely on the right reserved in the ordinance of 1879, it follows that the assailed ordinance, even if unwarranted was not an impairment of a contract right in the constitutional sense.

This proposition is in conflict with the one just considered, and in effect assumes, that the defence of the city was without merit, and hence there was no jurisdiction. But irrespective of the assumption upon which it rests, the proposition is untenable, and the argument by which it is sought to be sustained is somewhat wanting in consistency. The passage by the city of the assailed ordinance necessarily amounted to an assertion on its part that the legislative authority vested in it to pass the ordinance of 1879 gave the continued power to pass subsequent ordinances executing the rights initiated by the ordinance of 1879, despite the ordinances which had supervened. This in its very essence was the assertion of a delegated power to legislate against the contracts embodied in the ordinances relied upon. We have said that the argument is somewhat wanting in consistency, because the contention of the city on the record is that the ordinances asserted as contracts, passed subsequently to 1879, did not deprive the city of the continued power to exert authority as to rates, because

the statutes of Ohio prevented the city from abrogating, by the subsequent contracts, the rights reserved in the ordinances of 1879. And this is but to assert that, as a consequence of the continued effect of the legislation of the State of Ohio, the city had the power to pass the assailed ordinance, even although it had apparently disabled itself from so doing by the passage of many ordinances adopted after 1879 and up to the time when the assailed ordinance was passed. These considerations distinguish this case from *Hamilton Gas Light Co.* v. *Hamilton City*, 146 U. S. 258, and *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142, relied upon by the appellant.

Respecting the contention that the case presented by the record was not within the jurisdiction of a court of equity, it suffices to say that, in view of the controversies, confusion, risks and multiplicity of suits which would necessarily have been occasioned by the resistance of the complainant to the enforcement of the ordinance, and in view of the public interests and the vast number of people to be affected, the case was one within the jurisdiction of a court of equity. This conclusion is, we think, besides inevitable, when it is borne in mind that the ordinance in question did not purport to reduce rates of fare upon the consolidated line, but was made operative alone upon a section of that line, and, therefore, necessarily, would have engendered the enforcement of two rates of fare over the same line, leading to consequences dangerous to the public interest, peace and tranquillity, the extent of which it would be difficult in advance to perceive. And this, we think, brings the case directly within the principle by which jurisdiction in equity was maintained in *Detroit* v. *Detroit Citizens' Street Railway Co.*, 184 U. S. 368.

We come then to the merits. For convenience of reference we copy in the margin[1] pertinent sections of the Revised Stat-

---

[1] *Copied from Bates' Annotated Statutes of Ohio—Revision of 1897.*

Sec. 2501. (Terms and conditions of construction and operation to be fixed by council; renewal of grant.)—No corporation, individual or indi-

utes of Ohio, embracing all which, either directly or indirectly, during the period covered by the ordinances set out in the bill, vested the municipal council of Cleveland with power to regu-

viduals shall perform any work in the construction of a street railroad until application for leave is made to the council in writing, and the council by ordinance shall have granted permission and prescribed the terms and conditions upon, and the manner in which the road shall be constructed and operated, and the streets and alleys which shall be used and occupied therefor, but the council may renew any such grant at its expiration upon such conditions as may be considered conducive to the public interest.

SEC. 2502. (Proceedings to establish a street railroad route; grant not valid for more than twenty-five years.)—Nothing mentioned in the next preceding section shall be done: no ordinance or resolution to establish or define a street railroad route shall be passed, and no action inviting proposals to construct and operate such railroad shall be taken by the council, except upon the recommendation of the board of public works in cities having such a board, and of the board of improvements in other municipalities having such a board: and no ordinance for the purpose specified in said preceding section shall be passed until public notice of the application therefor has been given by the clerk of the corporation in one or more of the daily papers, if there be such, and if not then in one or more weekly papers published in the corporation, for the period of at least three consecutive weeks; and no such grant as mentioned in said preceding section shall be made, except to the corporation, individual or individuals, that will agree to carry passengers upon such proposed railroad at the lowest rates of fare, and shall have previously obtained the written consent of a majority of the property-holders upon each street or part thereof, on the line of the proposed street railroad, represented by the feet front of the property abutting on the several streets along which such road is proposed to be constructed; provided, that no grant or renewal of any grant for the construction or operation of any street railroad shall be valid for a greater period than twenty-five years from the date of such grant or renewal, except in cities of the second grade of the second class, in which no grant or renewal of any grant for the construction or operation of any street railroad, shall be valid for a greater period than fifty years from the date of such grant or renewal; and after such grant or renewal of a grant is made, whether by special or general ordinance, the municipal corporation shall not, during the term of such grant or renewal, release the grantee from any obligation or liability imposed by the terms of such grant or renewal of a grant.

SEC. 2504. (Pavement of streets where railroads are constructed; proviso.) —The council may require any part or all of the track, between the rails of any street railroad constructed within the corporate limits, to be paved with stone, gravel, boulders or the Nicholson or other wooden or asphaltic pavement, as may be deemed proper, but without the corporate limits, paving between the rails with stone, boulders or the Nicholson, or other wooden

late or to contract in respect to the rates of fare to be charged by street railways.

The statutes show that there was lodged by the legislature

---

or asphaltic pavement, shall not be required; provided, that in cities of the second grade of the first class the council may require of any street railroad company to pave and keep in constant repair, sixteen feet for a double track or seven feet for a single track, all of which pavement shall be of the same material as the balance of the street is paved with.

Sec. 2505. (Council of city or village may grant extension of street railroad.)—The council of any city or village may grant permission, by ordinance, to any corporation, individual, or company owning, or having the right to construct, any street railroad, to extend their track, subject to the provisions of sections three thousand four hundred and thirty-seven, three thousand four hundred and thirty-eight, three thousand four hundred and thirty-nine, three thousand four hundred and forty, three thousand four hundred and forty-one, three thousand four hundred and forty-two, and three thousand four hundred and forty-three, on any street or streets where council may deem such extension beneficial to the public; and when any such extension is made, the charge for carrying passengers on any street railroad so extended, and its connections made with any other road or roads, by consolidation under existing laws, shall not be increased by reason of such extension or consolidation.

   \*      \*      \*      \*      \*      \*      \*      \*

Sec. 2505*b*. (Consolidation.)—Wherever the lines or authorized lines of road of any street railroad corporations or companies meet or intersect, or whenever any such line of any street railroad corporation or company, and that of any inclined plane railway or railroad company or corporation or any railroad operated by electricity or other means of rapid transit may be conveniently connected, to be operated to mutual advantage, such corporations or companies, or any two or more of them, are hereby authorized to consolidate themselves into a single corporation; or whenever a line of road of any street railroad company or corporation organized in this State is made, or is in process of construction to the boundary line of the State, or to any point either within or without the State, such corporation or company may consolidate its capital stock with the capital stock of any corporation or company, or corporations or companies in an adjoining State, the line or lines of whose road or roads have been made or are in process of construction to the same point or points, in the same manner and with the same effect as provided for the consolidation of railroad companies in sections 3381, 3382, 3383, 3384, 3385, 3386, 3387, 3388, 3389, 3390, 3391 and 3392 of the Revised Statutes, and any and all acts amendatory and supplementary to said sections and each of them; and the said sections, including these so amended and supplemented, are adopted and made a part of this section.

   \*      \*      \*      \*      \*      \*      \*      \*

of Ohio in the municipal council of Cleveland comprehensive power to contract with street railway companies in respect to the terms and conditions upon which such roads might be constructed, operated, extended and consolidated, the only limitation upon the power being that in case of an extension or consolidation no increase in the rate of fare should be allowed.

That in passing ordinances, based upon the grant of power referred to, the municipal council of Cleveland was exercising a portion of the authority of the State, as an agency of the State, cannot in reason be disputed. If, therefore, the ordinances passed after August, 1879, and referred to previously, which ordinances were accepted by the predecessors of the complainant, with whom it is in privity, constituted contracts in respect to the rates of fare to be thereafter charged upon the consolidated and extended lines (affected by the ordinances) as an entirety, it necessarily follows that the ordinance of October, 1898, impaired these contracts.

The question for decision then is Did the consolidated ordinance of February, 1885, and the ordinances thereafter passed and accepted, already referred to, constitute binding contracts in respect to the rates of fare to be thereafter exacted upon the consolidated and extended lines of the complainant?

That in the courts of Ohio the acceptance of an ordinance of the character of those just referred to is deemed to create a binding contract is settled. *Railway Co.* v. *Village of Carthage,* 36 Ohio St. 631, 634; *City of Columbus* v. *Street Railroad Co.,* 45 Ohio St. 98. But let us consider the question without

SEC. 3443. (Council, &c., may fix terms and conditions.)—Council, or the commissioners, as the case may be, shall have the power to fix the terms and conditions upon which such [street] railways may be constructed, operated, extended, and consolidated.

\*     \*     \*     \*     \*     \*     \*     \*

(3443–12.) SEC. 5. (Consolidation.)—Such street railroad companies may consolidate on the terms and conditions applicable to the consolidation of railroad companies; provided, however, no increase of fare shall be allowed on any street railroad route by reason of such consolidation.

treating the Ohio decisions as conclusive.   It is undoubtedly true that immediately before and for a long time prior to the passage of the ordinances concerning the various consolidations and extensions referred to the respective roads affected thereby were charging a cash fare of five cents over their respective lines, and that the effect of the consolidations and extensions was to secure to the public the benefit of a cash fare of five cents over the whole length of the consolidated and extended lines.

Now, undoubtedly, the common council of Cleveland, in authorizing the extension and consolidation of the lines of street railroads in question, did so because in its opinion such extensions and consolidations would operate beneficially to the public.  See near the close of sec. 2505, Rev. Stat. Ohio, previously inserted in the margin.   That in exercising these powers it was the intention of the city to avail of the authority conferred by section 3443 of the Revised Statutes of Ohio, "to fix the terms and conditions upon which such railways may be constructed, operated, extended and consolidated," and that it was also the intention of the city to execute binding agreements in respect to the rates of fare to be thereafter charged by the railroad companies, will, we think, become clearly apparent by considering the language employed in the ordinances.   Thus in the ordinance of February 16, 1885, fixing the terms and conditions upon which the West Side Street Railroad Company and the Woodland Avenue Railway Company, and the tracks of those companies, might be consolidated, it was specifically provided "that for a single fare from any point to any point on the line or branches of the consolidated road no greater charge than five cents shall be collected, and that tickets at the rate of eleven for fifty cents or twenty-two for one dollar shall at all times be kept for sale on the cars by conductors."   The acceptance of this ordinance by the railroad companies affected thereby was required to be in writing, and filed with the city.   Like provisions were contained in the ordinance of April 8, 1887, authorizing the laying

of an additional track and the extension of the lines of the Woodland Avenue and West Side Street Railroad Company, and there was also a declaration, following the authorization of the extension and the rates to be charged on the whole line, that "The right herein granted shall terminate with the present grant of the main line, to wit, on the 10th day of February, 1908." The ordinance of August 12, 1887, authorizing a further extension, and the ordinance of June 20, 1892, authorizing the double tracking of a portion of the line, contained similar language.

In reason, the conclusion that contracts were engendered, would seem to result from the fact that the provisions as to rates of fare were fixed in ordinances for a stated time and no reservation was made of a right to alter, that by those ordinances existing rights of the corporations were surrendered, benefits were conferred upon the public, and obligations were imposed upon the corporations to continue those benefits during the stipulated time. When, in addition, we consider the specific reference to limitations of time which the ordinances contained, and the fact that a written acceptance by the corporations of the ordinances was required, we can see no escape from the conclusion, that the ordinances were intended to be agreements binding upon both parties definitely fixing the rates of fare which might be thereafter charged. Taking all the circumstances above referred to into account, the case before us clearly falls within the rule as to the binding character of agreements respecting rates applied in *Detroit v. Detroit Citizens' Street Railway Company,* 184 U. S. 368, and approvingly referred to in *Knoxville Water Co.* v. *Knoxville,* 189 U. S. 434, 437. This being the case, the question is whether the ordinance of 1898 impaired the obligations of those contracts.

By the assailed ordinance the city of Cleveland, assuming to assert continuing delegated power and upon the theory that the subsequent contracts were void as to that power, disregarded the provisions for consolidations, extensions, etc., and

whilst retaining all the benefits procured by the ordinances for the public, reduced the cash and ticket fares over the portions of the line embraced in the ordinance of 1879, of the Kinsman Street Railroad, which had long since lost its identity and become merged with other roads. That this was an impairment of the contracts embodied in the prior ordinances, we think is free from doubt.

Finally, it is contended that the ordinances embodying the contracts were void in so far as they attempted to deprive the city of the continuing legislative power to act on the reservation contained in the ordinance of 1879. This is based on the assumption that the right reserved in that ordinance to increase or reduce rates of fare was an obligation and liability imposed upon the railroad corporation within the meaning of section 2502 of the Revised Statutes of Ohio, declaring that a municipal corporation should not, during the term of a grant or renewal thereof, release the grantee from any obligation or liability imposed by grant. But it has been held in Ohio, on reasoning commending itself, that a modification of a contract between a municipality and the owner of a street railroad, made in good faith for the better accommodation of the public, is not void by virtue of said section 2502 of the Revised Statutes of Ohio. *Clement* v. *City of Cincinnati,* 16 Weekly Law Bulletin, 355, (decided June 14, 1886, by the general term of the Superior Court of Cincinnati; leave to file a petition in error refused by the Supreme Court of Ohio, on January 17, 1888. 19 Weekly Law Bulletin, 74).

It is further contended "that any attempt to treat the consent to extensions, consolidations or change of motive power as renewals of the rights renewed by the ordinance of 1879, must be nugatory in view of the positive provisions of the statute above cited, which confer upon municipal corporations power to make such renewals only at the expiration of existing grants." This contention has also been passed upon by the courts of Ohio, construing the provisions of the Revised Statutes of that State, relied upon, and it has been held that re-

newals may be made before the expiration of the original grant. *State* v. *East Cleveland Railroad Company*, 6 Ohio Circuit Court Rep. 318, affirmed by the Supreme Court of Ohio without opinion, 27 Weekly Law Bulletin, 64.

Concluding, as we do, that the ordinance of 1898, impaired the obligations of contracts entered into by the city of Cleveland fixing the rate of fare to be charged on the lines of railroad operated by the complainant, the decree of the Circuit Court adjudging the nullity of this ordinance was right, and it is therefore

*Affirmed.*

MR. JUSTICE HARLAN took no part in the decision of this cause.