Common Pleas Court of Hamilton County.

EDWARD A. KUERTZ, TAXPAYER, ETC., V. UNION GAS & ELECTRIC CO.

Decided December 22, 1927.

*Lawrence K. Langdon* and *Saul Zielonka,* for the Union Gas & Electric Company.

*W. Jerome Kuertz,* for plaintiff.

*John D. Ellis, Edward F. Alexander* and *Bert H. Long,* for the city of Cincinnati.

STRUBLE, J.

This cause is before the court on exceptions filed by the

plaintiff and the defendant, the Union Gas & Electric Company, to the findings of fact and law as reported to the court by Special Master Commissioner, Mr. Sanford Brown, heretofore appointed by the court to make a finding of the facts and law in this case and report the same to the court.

The findings of the Special Master Commissioner cover such a wide field and the exceptions thereto are so numerous that the court will not attempt to consider same in detail, but will content itself with a consideration of such of the findings of the Special Master Commissioner as relate to certain essential and fundamental differences between the parties to this cause.

From this it will readily appear which of the exceptions the court allows and which it disallows.

A brief prefatory statement of the character of plaintiff's action, of the accepted facts and of the claims of the parties will indicate clearly the fundamental differences between the parties.

### PLAINTIFF'S ACTION.

The plaintiff, Edward A. Kuertz, a taxpayer, brings this action in behalf of the city of Cincinnati, alleging in his petition in substance that the defendant Gas Company is obligated by contract with the city of Cincinnati to furnish electricity to the city and its inhabitants according to the rates and charges fixed in ordinance No. 328 duly passed by the city council of Cincinnati August 11, 1925.

Plaintiff claims that the defendant Gas Company is not carrying out this obligation, and prays that this court issue a mandatory order compelling the defendant Gas Company to furnish electricity to the city and its inhabitants according to the rates and charges fixed in said ordinance No. 328-1925.

It appears further that the defendant Gas Company is continuing to charge for electricity, or was so doing at the time of the hearing of this cause, according to a ten year rate ordinance passed in 1915, which ordinance in due course of time should have expired October 8, 1925.

It appears further that the rates and charges under the

old ordinance of 1915 are considerably higher than under the new ordinance of 1925, and the plaintiff is asking that the consumers of electricity of the city of Cincinnati be given the benefit of the lower rates and charges provided for by ordinance No. 328-1925.

## ACCEPTED FACTS.

Ordinance No. 328-1925 is a rate ordinance duly passed by the council of the city of Cincinnati August 11, 1925, wherein rates and prices for electricity are fixed for a period of ten years, beginning October 8, 1925.

On August 11, 1925, the same date as its passage, Ordinance No. 328 was transmitted and filed with the mayor cf the city of Cincinnati for his approval or disapproval.

On August 20, 1925, the mayor of the city of Cincinnati disapproved, or in other words, vetoed and returned said ordinance to council with a statement of his objections to the same.

On September 2, 1925, council re-considered said ordinance and by vote of two-thirds approved the same, thus overturning the veto of the mayor.

On October 1, 1925, a referendum petition was filed with the city auditor of the city of Cincinnati, purporting to contain the signatures of ten per cent. of the electors of the city of Cincinnati, requesting a referendum on said ordinance No. 328-1925.

On October 9, 1925, the Union Gas & Electric Company filed with the council of the city of Cincinnati its written acceptance of said ordinance and agreement to abide by and fulfill all of the terms, conditions and provisions of the same, which written acceptance was duly received by the city council of Cincinnati, and ordered entered upon the minutes of council and duly filed by the clerk of council.

On June 9, 1926, the city council of Cincinnati repealed ordinance No. 328-1925.

Council did not pass an ordinance submitting said ordinance No. 328-1925 to the electors at either a general or special election. The regular election occurred on November 3, 1925.

There was no submission of Ordinance No. 328-1925 to the electors of the city of Cincinnati for their approval or disapproval.

The foregoing constitutes the series of events in the history of said ordinance and lay the basis of the respective claims of the parties to this cause.

### PLAINTIFF'S AND GAS COMPANY'S CLAIM.

Plaintiff claims—and with this claim the defendant Gas Company is in accord—that the acceptance of Ordinance No. 328-1925 by the Gas Company effects a binding contract between the city and Gas Company; which the city and the users of electricity in the city have the right to have enforced.

The basis of this claim is that the referendum petition is invalid and the city concedes this claim if the referendum petition be found to be invalid.

### THE CITY'S CLAIM.

The city of Cincinnati claims that the acceptance by the Gas Company of this ordinance never became effective as a binding contract with the city, because the filing of the referendum petition had the legal effect of suspending the operation of the ordinance, pending its submission to the electors, and that council having repealed Ordinance No. 328-1925 while it was thus held in legal abeyance, the acceptance of the Gas Company of the ordinance is without force and effect.

The basis of this claim is that we are dealing with a valid statutory referendum which city council could avoid by repealing Ordinance No. 328-1925 under authority of Section 4227-8, General Code of Ohio, the pertinent part of which is as follows:

"If after a duly verified referendum petition has been filed against any ordinance or measure, the legislative body of a municipality repeals said ordinance or measure, or said ordinance or measure is held to be invalid, the Board of Elections shall not submit such ordinance or measure to a vote of the electors."

### THE ESSENTIAL ISSUE.

It will be noted that the essential issue between the parties is as to the validity of the referendum involved, and

a determination of this issue involves a consideration of the special procedure provided in the Ohio Constitution, Article XVIII, Sections 4, 5 and 8, which concern the ownership of public utilities by municipalities, the product and service of which is to be supplied to municipalities and their inhabitants, or to contract with others for such product and service; and the general procedure provided by Section 4227-2 to 4227-12 inclusive for referendums on all matters which municipalities have the power to control by legislative action.

The constitutional procedure will take precedence over the general or statutory procedure and must be followed in all matters covered by the constitutional procedure.

Corpus Juris, Vol. 12, page 709.
*Danke* v. *People*, 106 Ill., 37.
*Hartig* v. *City of Seattle*, 102 Pac. Reporter, 408.

The plaintiff particularly claims—

1.   That we are dealing with a utility matter and that the constitutional procedure must govern.

2.   That the referendum petition was not filed within time, considering the same as subject to either the constitutional procedure or the statutory procedure.

3.   That the referendum petition does not contain the signatures of the required number of qualified electors.

The city of Cincinnati claims that the referendum petition was filed within time, that it is a statutory referendum, and that it contains the signatures of the required number of qualified electors.

The Special Master Commissioner found for the city of Cincinnati in all three of the aforementioned fundamental issues between the parties.

## As to Whether or Not This Is a Constitutional or Statutory Referendum.

The Special Master Commissioner found as a conclusion of law that the statutory procedure should govern as to the referendum in the pending cause and that the repeal of Ordinance No. 328-1925 by the council of Cincinnati June 9, 1926, had the effect of preventing the acceptance of the defendant Gas Company becoming a binding contract be-

tween the city of Cincinnati and the defendant Gas Company.

We must agree with this conclusion of the Special Master Commissioner, assuming that we are dealing with a statutory referendum, and that the referendum petition was filed in time, because under the facts in this case the next regular election in the city of Cincinnati following the filing of the referendum petition at which the same could have been submitted to the electors was in November, 1926. Sec. 4227-2 G. C. O.

While the referendum was thus pending the council of the city had the alternative of repealing the ordinance and thus ending the matter.

The court concludes, however, that the referendum petition involved in the pending cause is governed by the constitutional procedure, and that the conclusion of the Special Master Commissioner must be disallowed.

Section 4, Article XVIII, of the Ohio Constitution, in part is as follows:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product and service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service * * *."

This section vests the city with the power of acquiring public utilities of its own, or of contracting with others for utility products and service.

Electricity is a utility product and it was by favor of Section 4 before mentioned that the city council of Cincinnati passed Ordinance No. 328-1925, securing to the city and its inhabitants this product by contract with the defendant Gas Company for a period of ten years.

Counsel for the city of Cincinnati concede that in the passage of Ordinance No. 328-1925 the city was exercising the power and authority vested in it by Section 4 of Article XVIII of the Ohio Constitution.

Section 5, of Article XVIII provides the procedure whereby the city may acquire or own a public utility, or whereby it may contract for the product and service thereof.

Section 5 is as follows:

"Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of Section 8 of this article as to the submission of the question of choosing a charter commission. (Adopted September 3, 1912.)"

Section 8 determines the effect of the filing of a referendum petition to such ordinance, and provides the procedure for the submission of the same to the electors, which must be done by the legislative authority of the municipality by ordinance duly passed and submitted at an election to be held "at the next regular municipal election, if one shall occur not less than sixty days nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid."

Counsel for the city, while conceding that ordinance No. 328-1925 is an ordinance contracting with a public utility for its product and service, claims that the procedure provided by Section 5 does not apply to an ordinance contracting with a public utility for its product and service. The contention of the city is that said ordinance is not governed by the procedure in Sections 5 and 8 for submission to the electors, because the word "therefor" in the third line of Section 5 does not refer to contracts for the "product and service," but merely to "public utility." The use of the word "therefor" in the third line of Section 5 is unfortunate as occasioning controversy as to whether it refers to and means "public utility," or refers to and means the "product and service" as referred to in Section 4.

Counsel for the city construe the word "therefor" as used in the third line of Section 5 as meaning "public utility," while counsel for the plaintiff construe the word "therefor" as meaning "product and service."

If we are to construe "therefor" as used in Section 5 to mean "public utility," then the third line is to be read as follows:

"Or to contract with any person or company for such public utility."

If this is the sense in which the word "therefor" is used in Section 5, then the procedure by this section does not apply to Ordinance No. 328-1925, whereby the city is contracting with the defendant Gas Company for its product and service.

If we are to construe the word "therefor" as used in Section 5 as referring to and meaning "product and service," as mentioned in Section 4, then the third line of Section would read as follows:

"Or to contract with any person or company for such product and service."

If the latter meaning is to be given to the word "therefor," then the procedure of Section 5 does govern as to the submission of the referendum petition involved as to Ordinance No. 328-1925.

The court concludes that the word "therefor" as used in Section 5 refers to and means "product and service," which the municipalities of the state by force and favor of Section 4, Article XVIII, may secure for themselves and their inhabitants from others by contract.

If this is not the proper meaning to give to the word "therefor" as used in this section, then the third line of this section is surplusage, and is merely saying over again what had already been said in the two lines preceding.

Sections 4 and 5 of Article XVIII must be construed together—the former as vesting the municipalities of the state with the power to acquire public utilities of their own, or to contract with others for utility product and service, and Section 5 must be construed as providing the procedure for the exercise of the power conferred upon

municipalities by Section 4. This construction of Section 5, Article XVIII, of the Ohio Constitution, is supported by authoritive decisions of this state.

In *Ohio River Power Company* v. *Steubenville*, 99 O. S., 421, the Supreme Court of Ohio indicates by what it says in part 4 of the syllabus to its decision in this case that the procedure in Section 5 applies to an ordinance contracting with a Utility Company for its product and service. Syllabus 4 reads as follows:

"A contract entered into by a public utility and a municipality of this state, whereby the public utility agrees to supply its product or service to the municipality or its inhabitants for a period of ten years, at a rate, price, charge, toll, or rental specified in such contract, is expressly authorized by Section 4, Article XVIII of the Constitution of Ohio, and is valid and binding upon the parties thereto, unless disapproved by a majority of the electors voting thereon, at a referendum election held under the provisions of Section 5, Article XVIII of the Constitution of this state."

The claim is made by counsel for the city that the Steubenville case ought not to be accepted as an authority for construing Section 5 as applying to a contract for the product and service to be furnished municipalities by a utility company, because the question of the application of this procedure to such a situation was not before the court in this case. However this may be, the Supreme Court took the trouble to include in its syllabus to its decision in this case language that clearly indicates that the Supreme Court construes Section 5 as applying to a rate ordinance contracting for the product and service of a public utility company.

In the Steubenville case the court had before it for its consideration such a contract and said that it was authorized by Section 4, and further that it "is valid and binding upon the parties thereto, unless disapproved by a majority of the electors voting thereon, at a referendum election held under the provisions of Sections 5, Article XVIII of the Constitution of this state."

This language is clear and explicit and this court is justified under the circumstances in accepting it as the

view of the Supreme Court as to what is covered by the procedure provided in Section 5.

Counsel for the plaintiff and for the Union Gas & Electric Company cite other decisions to the same effect:

*State, ex rel.,* v. *Cincinnati Street Railway Co.,* 97 O. S., 283, at 297.

*Link et al.* v. *Public Utility Commission of Ohio,* 102 O. S., 336.

*State, ex rel.,* v. *Weller,* 101 O. S., 123.

*Dravo Doyle* v. *Village of Orrville,* 93 O. S., 236.

So that so far as the matter has been before the courts of this state, the construction given to Section 5, either inferentially or in language direct and explicit, the word "therefor" as used in Section 5 has been construed as referring to contracts with utility companies for their product and service, and that a rate ordinance contracting therefor is subject to the referendum procedure provided by Section 5.

Counsel for the city concede that if the procedure in Section 5 applies to the referendum petition involved in this case, that the ordinance passed by the city council June 9, 1926, repealing Ordinance No. 328 was ineffective and that the city must fail as to its claim that the acceptance of Ordinance No. 328 by the Union Gas & Electric Company did not become binding as a contract.

It must be conceded that if the acceptance of the Gas Company effected a contract with the city, then the repeal of Ordinance No. 328 would be an impairment of the obligation of the contract.

The admission of counsel for the city of Cincinnati that the acceptance of the contractual rate ordinance constitutes a valid binding contract which cannot be impaired by later legislative action is supported by ample authority cited by counsel for the Gas Company and the plaintiff in their very able briefs filed with the court in this case.

*The Ohio River Power Co.* v. *City of Steubenville,* 99 O. S., 421.

*Link* v. *Public Utility Commission of Ohio et al.,* 102 O. S., 336.

*Cincinnati & Springfield Railway Co.* v. *Village of Carthage,* 36 O. S., 631.

*City of Columbus* v. *The Railway Co.,* 45 O. S., 98.

*City of Cleveland* v. *Cleveland Street Railway Co.,* 194 U. S., 517.

*Louisville* v. *Cumberland Telephone Co.,* 224 U. S., 649.

*Grand Trunk Railway Company* v. *South Bend,* 227 U. S., 545.

*City of Cleveland* v. *Cleveland Street Railway Company,* 194 U. S., 517.

*Detroit* v. *Detroit Street Railway Company,* 184 U. S., 373.

This necessarily is so if we are dealing with a constitutional referendum, because the referendum petition under consideration was not filed in time, nor did the city council of Cincinnati by ordinance submit the same to the electors of the city.

Section 8, Article XVIII, clearly makes it the duty of the legislative authority of a municipality upon the filing of a proper referendum petition to an ordinance passed pursuant to Sections 4 and 5 of Article XVIII, to forthwith by ordinance submit such referendum to the electors at the next regular municipal election, if one shall occur not less than sixty days nor more than one hundred and twenty days after its passage; otherwise a special election shall be called and held within such time.

Upon the filing of a referendum petition under and by favor of Section 5 before mentioned, as a condition precedent to the submission of such referendum to the electors, it is incumbent upon the legislative authority of a municipality to investigate and determine the validity of such referendum petition (*State, ex rel.,* v. *Givens et al. City Counsel of Cleveland,* 116 O. S., 261; Ohio Law Bulletin and Reporter, May 23, 1927)—as to whether or not such referendum petition contains the requisite number of signatures of qualified electors, and as to whether or not the formalities required by the statute are followed in securing signatures, and where the legislative authority fails to submit such referendum to the electors, the presumption is that this was because the referendum petition was found upon examination to be invalid. *Powelsland* v. *Toledo,* 15 O. S. App. Reports, 198, at 202; *Mitchell* v. *Treasurer of Franklin,* 25 O. S., 143, at 153; 22 Ruling Case Law, Section 143, page 472.

## As to Whether the Referendum Petition Was Filed in Time.

The court concludes that the referendum petition was not filed in time whether we consider the same as a constitutional or as a statutory referendum. Section 5, Article XVIII, provides in substance that a municipality in acquiring a public utility or the product and service of a public utility must act by ordinance and that no such ordinance shall go into effect until after thirty days from its passage by the council of such municipality, and further that if within said thirty days a referendum petition be filed with the executive authority of such municipality, that the procedure set forth in Sections 5 and 8 of Article XVIII must be followed as to its submission to the electors.

Ordinance No. 328-1925 was passed by council of Cincinnati August 11, 1925, and the referendum petition was not filed with the executive authority of the city until October 1, 1925, fifty days after the passage of the ordinance. If the referendum petition in question be considered as a constitutional referendum, it cannot be claimed that it was filed in time, for the Constitution clearly provides that such a referendum petition must be filed within the thirty days allowed for the ordinance to go into effect following its passage by council of the city.

Considering the same as a statutory referendum Section 4227-2 provides in substance that referendum petitions as to ordinances in cities must be filed with the city auditor "within thirty days after any ordinance or any other measure shall have been filed with the mayor."

Ordinance No. 328-1925 in question was filed with the mayor of the city the same day as its passage by the city council, which was August 11, 1925. This was fifty days before said referendum petition was filed with the city authorities, and if we are to follow the rule prescribed by the legislature in Section 4227-2, we must hold that the referendum petition involved in this case was not filed in time, considering the same as a statutory referendum. (*Hamilton* v. *Grevey*, 9 Ohio App. Reports, page 221, at page 224.)

The Special Master Commissioner in holding that the

referendum petition was filed in time, considering the same as a statutory referendum, followed the holding in *Schultz* v. *The Union Gas & Electric Company*, No. 195329, Common Pleas Court of Hamilton County, Ohio.

This holding is as follows:

"It has been suggested in the argument that there is no provision for the re-filing of an ordinance with the mayor after it shall have been vetoed and re-passed. The suggestion, therefore, is that the time that this ordinance shall go into effect dates from its original passage. In view of the constitutional provision referred to (Art. 2, Sec. 1-f) and the presumption that the legislature did not have it in mind to prevent referendum under the circumstances in this case, the court is of the opinion that the ordinance as re-passed is subject to a referendum, and that the thirty day period referred to begins May 19, which was the day of the re-passage."

According to the decision of the court in the Schultz case the referendum petition in question was filed in time, as it was filed with the auditor of the city October 1, 1925, which was within thirty days of the passage of the ordinance over the veto of the mayor, which was on September 2, 1925.

This court considers the holding in the Schultz case as contrary to the express rule provided by the statute.

The several events in the process of an ordinance becoming a law, such as its passage by council, the filing of the same with the mayor, its veto by him, and its re-passage over his veto, are definite events about which the legislature must be accredited as knowing. When the legislature designates the day of the filing of the ordinance with the mayor as the time from which to calculate the thirty days period within which a referendum petition must be filed, the legislature must be permitted to have its way about the matter, and the duty of the court is to enforce the rule prescribed by the legislature.

The filing of a referendum petition within the time prescribed by the Constitution, or by the statute, as the case may be, is jurisdictional and essential to give the municipality the right to submit the same to the electors. *State, ex rel. Greenland,* v. *Fulton, Secretary of State,* 99 O. S., 168; *Switzer* v. *State, ex rel.,* 103 O. S., 306, at 316.

### AS TO WHETHER THE REFERENDUM PETITION CONTAINED THE REQUISITE NUMBER OF SIGNATURES.

The court does not consider it necessary to discuss at great length this phase of the case, in view of its holding that the referendum petition is void by reason of its not having been filed in time, and for the further reason that it has become inoperative because of the failure of the city council to submit the same within the time prescribed by the Constitution, the conclusive presumption being that this failure to submit the referendum to the electors was because of a finding of council that the referendum petition was illegal.

### RECAPITULATION OF THE CONCLUSIONS OF THE COURT.

The court finds that—

A. The referendum invoked is a constitutional referendum, and that the failure of the city council of Cincinnati to submit same to the electors within the time prescribed by Section 5, Article XVIII of the Ohio Constitution renders such referendum inoperative and void.

B. The referendum petition involved in this cause was not filed in time, whether we consider the referendum invoked thereby as a constitutional referendum, or as a statutory referendum.

C. That the acceptance of Ordinance No. 328-1925 filed with the city council of Cincinnati October 9, 1925, effected a binding contract between the city of Cincinnati and the Union Gas & Electric Company.

D. That the council of the city of Cincinnati is without the power by ordinance or otherwise to impair the obligations of this contract, or to change the terms and conditions thereof, and that Ordinance No. 230-1926, passed June 9, 1926, purporting to repeal Ordinance No. 328-1925, is ineffective and void as impairing the obligations of the contract effected between the city of Cincinnati by Ordinance No. 328-1925 and its acceptance by the Union Gas & Electric Company.

The further conclusion of the court is that the plaintiff is entiled to have a mandatory order issued as prayed for.