## No. 11,378.

THE EAST LOUISIANA RAILROAD COMPANY VS. THE CITY OF NEW ORLEANS.

Sec. 34 of Art. 135 of 1888 applies to street railways operated within the corporate limits of the city of New Orleans.

The City Council of New Orleans has the power to refuse the grant of a right of way through the streets of the city to a railroad operated beyond the city limits. It can also demand a price for the privilege, and it can also, if it deems the exercise of the power reasonable and proper, grant the right of way to a railroad operating their lines beyond the city into other territory, without compensation in money, but for other considerations.

In such a case, if the grant is accepted, it is irrevocable, except for a violation of their terms.

APPEAL from the Civil District Court, Parish of Orleans. Ellis, J.

*Farrar, Jonas & Kruttschnitt* Attorneys for Plaintiff and Appellee:

The city of New Orleans had ample legislative authority to grant the plaintiff the right of way in question. Section 8 of Act No. 20 of 1882, paragraph 13; Art. 243, Constitution of 1879; Sec. 689, Revised Statutes; Duplessis vs. Brown, 14 An. 842.

The plaintiff does not operate a street railroad, and the grant does not cover such a franchise; hence, the Act 135 of 1888, requiring street railway franchises to be sold at auction, does not apply. Booth's Street Railway Law, Sec. 1.

The grant having been lawfully and unconditionally made, and thus accepted and acted upon, is an executed contract, and is protected from impairment by the Constitution of the United States. It can not be withdrawn or onerously modified without plaintiff's assent. Booth's Street Railway Law, Sec. 40; City vs. Telephone Company, 40 An. 41; St. Louis vs. Telephone Company, 148 U. S. 103.

*E. A. O'Sullivan*, City Atttorney, *for Defendant and Appellant:*

The plaintiff in this case was bound to know that under the laws in force when Ordinance 6139 was passed that street railroad franchises could not be granted except at public auction, and to the highest bidder.

He was bound to know that he could not acquire this valuable franchise without paying the city for it, and he was bound to know that all laws which permit the transfer of these franchises without advertising for what consideration parties desire to give had been abrogated by the act of 1888, and that, therefore, his title to the same was null and void.

Act 135 of 1888, Sec. 4, provides: "That said council shall not have power to grant, renew or sell or to dispose of any street railroad franchise except after at least three months' publication of the terms and specifications of said franchise, and after the same has been adjudicated to the highest bidder by the comptroller, as provided in Sec. 21 of the City Charter."

*Chas. Louque*, Attorney at Law, as *amicus curiæ*, submitted a brief.

The opinion of the court was delivered by

McEnery, J.   The plaintiff company has its domicile in the parish of St. Tammany, and operates a railroad from Pearl River Station, on the line of the New Orleans & Northeastern Railroad Company, to Covington, in said parish, and a branch to Mandeville, and has thirty-six miles of road in active use.

The charter of the company confers the power upon the directors to extend the road to points in Mississippi and Louisiana.

By an arrangement with the Northeastern Railroad Company, it runs its trains over that road to the city of New Orleans, at its terminus on Press street.

To facilitate its business in the transportation of freight and passengers, and for the convenience of its patrons, it obtained from the City Council of New Orleans, by Ordinance 6139, the privilege to construct and operate a railroad with steam power from a point on the Northeastern Railroad, where it intersects Edinburg avenue, through said avenue to Bayou St. John, across said bayou to the road-bed of the Spanish Fort Railroad, and over said road-bed to the corner of Canal and Basin streets.

No price was paid for this grant, and the consideration alleged is the convenience of the citizens of New Orleans, in giving them better access to the trains of the plaintiff company, which at present are some distance from the centre of the city.

The plaintiff company accepted the grant and proceeded to comply with it, and expended some three thousand dollars in work, and in anticipation of its benefits constructed the Mandeville branch.

No price having been paid for the grant, the City Council, believing it to be null and void, repealed the ordinance granting it. Hence this suit, to have declared null and void the repealing ordinance.

The action of the City Council was based on the provisions of Sec. 34 of Act 135 of 1888. This section of the act manifestly applies only to street railway franchises, granted for the purpose of operating a road exclusively within the city limits. It does not apply to railroads carrying the mails and transporting freight and passengers long distances beyond the limits of the city. The Legislature never intended, and in the nature of things such intention would be impractical in execution, to cause railroads coming into the city from a distance to have the franchises of the right of way sold at stated times to the highest bidder. The act is limited in its application, when it says that the City Council shall have no power * * * "to sell or dispose of any street railroad franchise except after, at least, three months' publication of the terms and specifications of said franchise, and after the same has been adjudicated to the highest bidder by the comptroller, as provided in Section 21 of the city charter." No latitude of construction could make the provisions of this section of the Act 135 of 1888 extend to other than roads which are operated exclusively within the corporate limits.

The fact that the plaintiff's road reaches the city over another road does not change its character into a street railway. Its attempt to reach the road over which in part it runs its trains is a matter of convenience. Its destination is still beyond the city limits, and practically it is a continuous line of road from the city to its objective point—Covington. If it ran its trains only from its intersection with the Northeastern Railroad within city limits, and carried passengers and freight between these points, it would be classed as a street railway and come within the purview of Sec. 4 of Act 135 of 1888.

But this is not a fact. The object of the plaintiff company is to carry freight and passengers on its own cars beyond the city limits to Pear River Station, when they will reach their own road-bed. As the road of plaintiffs is not a street railway, the City Council had the

power to grant the franchise without requiring a compliance with Act 135 of 1838. Art. 243 of the Constitution.

The consent of the city is only necessary to grant the privilege of a right of way to a railroad running beyond the city's limits. See 689 R. S.

Having granted the franchise to plaintiffs and it having been accepted the contract was perfected. New Orleans vs. Telephone and Telegraph Co. 40 An. 41.

In the case of City of New Orleans vs. Telephone and Telegraph Co., 40 An. 41, this court said:

" Obviously upon the clearest consideration of law and justice, the grant of authority to defendant when accepted and acted upon became an irrevocable contract, and the city is powerless to set it aside or to interpolate new and more onerous considerations therein. Such has been the well recognized doctrine of the authorities since the Dartmouth College case. 4 Wheat. 518.''

The city of New Orleans can as a matter of right refuse to grant the authority for a passage through its streets of a railroad. It can also demand a price for the privilege. But it can also, as a matter of right, if it deems the exercise of the power reasonable and proper, grant the right of way to a railroad extending its lines into other territory without a compensation in money, but for other considerations.

In the instant case the council has granted to a railroad company a right of way through certain streets for the purpose of operating its road beyond the limits of the city. The grant has been accepted, and except for a violation of its terms it is irrevocable.

Judgment affirmed.