## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA.

---

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1907,

AND

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1908.

---

(47 South. 40.)

No. 16,999.

SHREVEPORT TRACTION CO. v. CITY OF SHREVEPORT et al.

(June 22, 1908. On Rehearing, June 29, 1908.)

1. CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS—IMPAIRMENT.

Corporations and individuals are entitled to the same protection under the contract clause of the federal Constitution.

2. SAME—ORDINANCE.

An ordinance granting a right accepted and acted upon by the grantee becomes an irrevocable contract. The right cannot be amended or diminished without the consent of the grantee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 292–324.]

3. SAME—POLICE POWER—SURRENDER.

It is generally true of governmental power, especially the police power, that it cannot be surrendered or alienated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 286.]

4. SAME.

The power retained after the grant does not include the authority to repeal, change, or modify the right granted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 292–324.]

5. SAME—RIGHT TO CHARGES AND TOLLS.

An ordinance, granting the right to a street railway company to run its cars on terms and conditions stated, by its acceptance confers a right, and thereafter the city council cannot lower the fare to be charged over the objection of the company.

If it were to do so it would impair the obligation of the contract. Cleveland v. Cleveland City R. R., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; Detroit v. Detroit, 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Knoxville v. Knoxville, 189 U. S. 434, 23 Sup. Ct. 531, 47 L. Ed. 887.

The first authority cited directly reaffirms the other two; all three are pertinent. They announce the rule laid down by the Supreme Court of the United States.

In each of these decisions the agreement between the municipality and the street railway was treated as binding.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 372–377.]

**6. SAME—RIGHT "TO REGULATE."**

The right "to regulate" cannot be held to affect the contract right transferred by the ordinance and accepted by the company.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6041–6047; vol. 8, p. 7782.]

**7. SAME.**

The contract in effect exempts the street railway from the municipal regulation of rates.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Andrew Jackson Murff, Judge.

Injunction by the Shreveport Traction Company against the city of Shreveport and others to restrain the execution of an ordinance requiring plaintiff company to issue transfers to passengers on its street cars. Judgment for plaintiff, and defendants appeal. Affirmed.

Ruffin Golson Pleasant, City Atty. (Hall & Jack, of counsel), for appellants. Wise, Randolph & Rendall, for appellee.

BREAUX, C. J. The city of Shreveport seeks by an ordinance, adopted by its council, to compel the plaintiff company to issue transfer tickets to passengers on its street cars.

This ordinance provides that any passenger who shall have paid his fare on any street car or any vehicle on defendants' line shall, on his request, be entitled to a transfer ticket to be carried on any one line adjoining to, connecting with, or crossing the roads of defendant.

One of the conditions under the ordinance upon which the passenger may obtain this ticket is that the transfer ticket shall be used in the next car going on the way of a continuous trip. If the first car is overcrowded then it may be used on a later car at the point or place at which the transfer was issued.

There is another section of the ordinance imposing a penalty on defendant companies in case they do not comply.

The plaintiff proceeded by injunction to prevent the defendant from executing the ordinance.

The defendant makes no defense on the ground that plaintiff had no right to an injunction. It admits that if the ordinance is illegal the plaintiff is entitled to an injunction, but not otherwise.

The injunction is only referred to in passing. It is a mere incident of the case.

The following shows the extent of the power delegated by the state, as relates to the point at issue, to the city of Shreveport, as contained in its charter. Quoting from the charter:

"The council shall have power to pass such ordinances as are necessary to regulate the government of carts, drays, wagons, and other vehicles, freight, locomotive, passengers, and street cars."

The grant by the city of Shreveport of franchises to the plaintiff was for a stated number of years, to wit, 50.

A bond issue has been made and recorded of $200,000; the lines of defendant are operating under one management; the cars on each line do not run on other lines. The indebtedness of plaintiff is suggestive of the necessity of revenues for paying its debts, if for nothing else.

In its answer, the defendant admits that the city had authority to grant the franchise to occupy the streets but alleged that the city had no authority to grant away the sovereign right to regulate and fix rates from time to time as necessity and justice might require, and that the right to fix and regulate the rates includes the right to require transfer tickets.

The grant of the city to plaintiff consisted of a right of way to lay tracks on certain streets of the city and to maintain and operate by electricity a street railway overhead trolley system.

There were three grants of franchises made by defendant to plaintiff.

In the first grant, dated September 7, 1897, it was provided "that the fare should be five cents on each belt; the school children, however, were charged three cents with the privilege of going to and from school."

The next grant is dated July 22, 1903, and was to the West Shreveport line. The limit in that grant was "one fare on either of said lines of railway at five cents between 5:45 a. m. and 11:30 p. m.; school children to pay three cents."

The next grant is dated September 22, 1904. That was to the Hyland Park Company and limited the fare not to exceed "five cents for passengers from one end of the line to the other or any part of the distance. The Genevieve Orphans shall be carried free and school children at half rate."

The contention on the part of defendant is that the city never intended to abandon its right to control and fix rates.

We will here state that (as it were preliminarily), if such was the intention, it is strange that it did not insist upon inserting something to indicate the intention.

No evidence was offered in support of the contention that the business of plaintiffs' line would be operated at a loss in case the court holds that the transfer tickets should be issued. The plaintiffs rest their case on the right they had acquired under the original contract granting to them the franchise they hold.

The defendant certainly did fix the fare, and voluntarily entered into an agreement whereby plaintiff acquired the right, after expending required capital, to build its road and operate its cars in the streets of Shreveport.

Defendant has received a consideration, or that which is usually taken as full consideration for a franchise. The improvement of the city is a consideration in itself.

The power to regulate and its extent presents the all-important question.

We do not think that the city of Shreveport has the power of regulating to the extent of reducing the amount of the fare.

The city of Shreveport's contention is that by making the grant it did not abandon the sovereign right of exercising its authority and control over rates, while on the other hand, among other grounds, the plaintiff's contention is that the council had no right to prescribe penalty as it has attempted to do. Plaintiff invoked the several ordinances under which it holds its franchises as distinct contracts between plaintiff and defendant.

The judge of the district court, in a carefully written opinion, considered only one of plaintiff's grounds, which we abbreviate as follows: That grants are contracts which cannot be impaired without violating the organic law. This ground was sustained in the lower court and judgment pronounced in favor of plaintiff.

The contract was complete; it was an absolute contract; the stipulations were clearly stated and nothing is wanting to prevent it being considered as a complete and binding contract. It has all of the elements of a contract.

But, defendant interposed the objection, and strongly argued that the right to regulate must be written in the contract; that the right to regulate had not been abandoned; and that the right to regulate includes the right to alter rates.

We do not find it possible to agree with that view. The power to regulate did not, written as it is in the charter of the city, confer on the defendant city the right to reduce the fare. The city has parted with its franchises.

The defendant is no longer in a position to recall and repeal the ordinance fixing the fare to be charged and thereby affect and reduce the fare stipulated between the parties at the date in question.

One of defendant's contentions is that it

did not barter away the grant on condition that no change would thereafter be made in the rate of fare, and that it (defendant) was not bound by the contract to the extent claimed by plaintiff railway, unless it was made evident by plaintiff that by the terms of the ordinance it appears that the municipality expressed the intention to make no changes in the rates during the grant of the franchise.

It strikes us that the city could more properly be held to the necessity of declaring in its ordinance that there was no intention of abandoning its right to reduce the fare if it should deem it proper. The city never intimated anything of the kind. On the contrary, as relates to one of the grants, we are informed by the testimony that plaintiff expressed its unwillingness to accept the grant if it contained the stipulation that transfer tickets would in time be required.

It may be that the law-making authority directed by legislation or through a railroad commission can regulate carriers and their charges, for all we know, but municipalities have no right to change their contracts. We have not found a single decision holding directly and expressly that the essentials of a contract may be changed or modified by the municipality in matter of revenue, as relates to a franchise parted in express terms.

But, to return to the power of regulation, it includes all that the word implies, but it does not include the power to regulate fares. Such contracts as here under consideration should not be violated. That was substantially the opinion expressed in the case of Forman v. Railroad Co., 40 La. Ann. 447, 4 South. 246. In another decision, this court said: "The contract having been accepted and carried into execution is irrevocable and must remain in force unless in some way there is a violation of its terms." Railroad Company v. City, 46 La. Ann. 526, 15 South. 157.

A decision cited by learned counsel for de-fendant does not sustain its contention. On the contrary, it was held that there was a contract between the city of New Orleans and the defendant company to which full force and effect was given. Robira v. R. R. Company, 45 La. Ann. 1365, 14 South. 214.

There are pertinent decisions of the federal Supreme Court.

With confidence, learned counsel for defendant quoted the following from Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636, in which Chief Justice Waite for the court said:

"This power of regulation is a power of government continuing in its nature, and that if it can be bartered away at all, it can only be by words of positive grant, or something which is in law equivalent. If there is a reasonable doubt it must be resolved in favor of the existence of power."

We have no reason to disagree from the expression just quoted. There must not be an unreasonable construction placed upon the grant such as would deprive the municipality of all authority, and if any doubt arises in regard to the extent of the power it should be resolved in favor of the municipality.

All of the foregoing is entirely correct. But here, different from the decisions just referred to, there are words of positive grant.

The point of difference between plaintiff and defendant relates to the meaning to be given to the word "regulate," as expressed in the city charter.

According to defendant, it includes the right to change the rate of fare. According to plaintiff, it does not extend that far.

We are of opinion that to regulate means such restrictions as may be necessary to protect the public from harm; it does not mean the least confiscation of any right or anything that will affect the revenues of the grantee. The right to "regulate" is to prescribe rules for the government of the cars in the city. It applies also to the means by which they are propelled. Ex vi termini it includes the right

to "regulate" the speed and other similar rights. Words and Phrases, vol. 7, p. 6043.

These rights to regulate do not affect the revenues.

According to Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353, cited by learned counsel for defendant, the public body that is charged with public duty in matter affecting the general interest "cannot be held upon mere implication or presumption to have divested itself of its powers."

To this view, there can be no good objection. Here, however, there is nothing left to mere implication and presumption. As before stated, the grant is clear and direct. The amount of the fare is fixed and the time during which it should be collected.

The next case cited by defendant also deals with the necessity of using clear language in matter of grants. Winchester v. Croxton, 98 Ky. 739, 34 S. W. 518, 33 L. R. A. 177.

The decision in the case of Georgia Banking Company v. Smith, 128 U. S. 180, 9 Sup. Ct. 47, 32 L. Ed. 377, also cited by defendant, is not controlling in this case. We do not find it quite pertinent. At any rate, it does not afford ground for another conclusion than that we have reached. We do not think it conflicts in the least with our view of the law of the case. As in the other cases we reviewed, it was a matter of construction resolved in favor of the municipality. In construing the grant the court determined that the power claimed had not been transferred.

This is different from our case.

In Detroit v. Detroit, 184 U. S. 389, 22 Sup. Ct. 410, 46 L. Ed. 592, we find much that is pertinent. In that case, the rate of fare having been fixed under proper authority, it was held, as we hold in our case, that it was not open to alteration by the common council by whom the grant had been made.

The federal Supreme Court said in the last-cited case:

"Can it be possible [referring to the language of the grant] that under this language permitting consent upon such terms and conditions as the city might from time to time prescribe, the power was reserved to make a rate of fare that might ruin the whole enterprise? Will it be believed that the parties thus understood the meaning of that provision? It would hardly be credible that capitalists about to invest money in that which was then a somewhat uncertain venture, while procuring the consent of the city to lay its rails and operate its roads through the streets in language which as to the rate of fare amounted to a contract and gave the company the right to charge a rate deemed essential for the financial success of the enterprise, would at the same time consent that such rate agreed upon should be subject to change from time to time by the sole decision of the town council."

The whole decision is replete with utterances that are pertinent here. As, for instance, one of the points of the defendant was that inasmuch as, in the grant under consideration, the rate of fare for one passenger "was not to be more than five cents," the court in said case held that the words "more than five cents" did not have the effect of retaining for the city the right to reduce the rate below the five cents established by the company without a special agreement with the company and without its consent.

Another of defendant's points, in the case from which we have quoted, was that the municipality could not bind as proposed succeeding administrations of the municipality. The court held in the Detroit Case just cited that within the bounds of reason such grants might be made.

We are led to state that while it is true that one generation should be careful not to fasten burdens without ample consideration on succeeding generations, none the less, when it is manifest that there is valid consideration extending far into the future, the grant may be made.

The Legislature (unless prohibited by constitutional provision) may authorize the municipal corporation to contract with a street railway company as to rates of fare and bind, during a specified period, any common council

from altering or in any way interfering with such contract. Id.

A number of decisions are cited in the Detroit Case. The first cited in said case is New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 6 Sup. Ct. 252. 29 L. Ed. 516.

In another decision entitled Freeport Water Co. v. Freeport City, 180 U. S. 588, 21 Sup. Ct. 493, 45 L. Ed. 679, the court held that the city council was authorized to contract to construct and maintain waterworks at such rates as may be fixed by ordinance, and for a period not exceeding 30 years; that the words "fixed by ordinance" might be construed to mean by ordinance during the whole period of 30 years, or it might be construed to mean a change or alteration possible on the part of the council. The word "fix" was made to apply to the rate instead of to the time. It was certainly a debatable question. The decision does not impress us as being controlling in our case. In the case here, different from the cited case, the contention on one branch of the argument (although the grant was complete) is that the word "regulate" performed the service of retaining full right in the city to alter the rate of fare, a contention with which we have not found it possible to agree. The Detroit Case was reaffirmed in Cleveland v. Cleveland Ry. Co., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102, and has some support in Dobbin v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169.

Learned counsel for the defendant city propounds the inquiry: Did the city council possess the power to transfer the grant in the face of article 46 of the Constitution of 1879 and article 48 of the Constitution of 1898, prohibiting the Legislature from granting any special immunity to a person or corporation?

The predicate of the inquiry is not on firm basis. It rests upon the idea of a special immunity granted. Of course, if special immunity had been granted in the case before us for decision, the article would bear application. Here a transfer was made of a franchise. It was not an immunity, a mere exemption. The contract was based on a quid pro quo—convenience to the public for which the public was to pay an amount deemed reasonable.

The power to fix rates is inherent in the government, to a reasonable extent at least. That power has been exercised at the date of the contract in this case. The transfer is a complete legal transfer in which sovereignty through the municipality appears as transferror. The same power asks to alter that which has been agreed upon. We feel constrained to disagree with the view that would lead to setting aside the agreement. The inviolability of contracts must be maintained. It only becomes necessary to show that there is a contract in order to hold all parties bound to its faithful execution.

To return for a few moments to the power of the city of Shreveport under the legislative grant to transfer the franchise, as it was transferred originally, including the right to fix fares: We find that it was similar to the power which the city of New Orleans had years ago under the provisions of Act No. 131, p. 182, of 1855, and Act No. 20, p. 14, of 1882. As to the last power, it was directly held in the Brown-Duplessis Case, 14 La. Ann. 842, that the city council of New Orleans "was empowered to grant franchises for the construction, operation, and running of railroads over the streets of that city with the right to fix the tariff of rates."

This was in effect reaffirmed in Forman v. Railroad Co., also cited above.

As this was the law for New Orleans, similar rule applies to the city of Shreveport.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.

### On Rehearing.

The whole contention of the defendants is predicated on the proposition that the city of Shreveport has no power to fix rates by contract so as to preclude the subsequent regulation of such rates by the city council.

The power to fix rates by contract and the power to regulate rates may coexist in the same council or other legislative body. Thus the Legislature has the undoubted power to regulate rates, but at the same time may grant to a railroad company the right to charge rates within certain limitations. Such a grant is a contract, and the rights thereby vested cannot be divested or impaired by subsequent legislation. Gulf S. I. R. Co. v. Adams (Miss.) 45 South. 91.

There is no express legislation in this state authorizing municipalities to establish rates for street railroads by contract or agreement. But such power necessarily flows from the statutory prohibition that no railroad shall be constructed through the streets of any incorporated city without the consent of the municipal council thereof, and from the general power of regulating the use of the streets. Rev. St. 1870, § 689; Act No. 131, p. 184, of 1855, § 7; Brown v. Duplessis, 14 La. Ann. 854; Forman v. Railroad Company, 40 La. Ann. 448, 4 South. 246. In the latter case, the ordinance fixing the rates of fare was held by the court to constitute a contract which the city had the undisputed right to make under its powers as expounded in the jurisprudence of the state. The city of New Orleans had the charter power "to authorize the use of the streets for horse and steam railroads and to regulate same." The city of Shreveport has the same power under its charter and section 689 of the Revised Statutes of 1870. If a municipality has the power to grant a franchise on conditions, it necessarily must have the power to enter into an agreement binding on both parties. If the railroad be bound by the tariff agreed upon, the municipality must also be bound. Under defendants' contention neither party is bound or one is bound and the other is free to repudiate the agreement. In Cleveland v. Cleveland City Railroad Company, 194 U. S. 534, 536, 24 Sup. Ct. 756, 48 L. Ed. 1102, an ordinance granting a street franchise, with the right to charge certain rates of fare, duly accepted by the grantee, was held to constitute a binding contract, the obligation of which could not be impaired by subsequent legislation.

The city of Shreveport had the power to grant the street franchise and to fix the rates of fare by agreement with the railroad company, and this contract precluded the municipality from lowering the rates during the life of the franchise. The contrary theory would leave the street car company at the mercy of every successive council, and would render the construction of street car lines impracticable as a business investment.

Rehearing refused.