LONG, Mayor, et al. v. MILLER et al.

(Circuit Court of Appeals, Fifth Circuit. December 9, 1919.)

No. 3386.

COMMERCE ⬿69—CITY WITHOUT POWER TO GRANT EXCLUSIVE LICENSE TO INTERSTATE FERRY.

A village ordinance granting an exclusive license to operate a ferry across the Mississippi river between the village and a city in another state, and making it an offense for any other person to operate a ferry between such places, and Act No. 111 of Acts La. 1912, and Act No. 68 of Acts La. 1896, in so far as authorizing such ordinance, *held* void, as in violation of the commerce clause of the Constitution.

Appeal from the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Suit by George H. Miller and others and the Vicksburg & Delta Ferry Company against R. Burney Long, Mayor of the Village of Delta, La., and others. From an order granting a preliminary injunction, defendants appeal. Affirmed.

The following is the opinion of Jack, District Judge, in the court below:

Plaintiffs ask an injunction against defendants, mayor and aldermen of the village of Delta, La., restraining them from further prosecution of petitioners for a violation of an ordinance of the town of Delta, granting an exclusive right to operate a ferry between Vicksburg and Delta Point, to the Missouri River Transportation Company and making it an offense for any other person to operate a ferry.

The authority of the town of Delta for a monetary consideration to grant such exclusive ferry privilege is claimed under Act 111 of 1912 of the Louisiana Legislature, under which said town is incorporated, which gives it the right "to license ferries and to regulate the same and the landing thereof within the corporate limits," and under Act 68 of 1896, which makes it unlawful for any person not a lessee of a public ferry to transport for hire any person across the Mississippi river or other streams in the state within a distance of two miles of any public ferry landing duly established under ordinance of a municipality. These acts, petitioners allege, in so far as they may be held to

authorize such ordinance, are violative of the due process of law and the commerce clause of the United States Constitution.

The ferry operates between Vicksburg and Kings Point, in the state of Mississippi, and Delta, La. It is not a part of a through system of transportation, being a local ferry, although some few articles of freight for Delta come by rail to Vicksburg from points beyond. The petition avers that the number of passengers carried average 150 a day and the freight 6 tons; that the value of the business is about $3,000 per month, and the value of the property invested is $6,000. We think the court has jurisdiction.

The petitioners live in Vicksburg, Miss., and have leased a private wharf at Delta, to and from which the ferry makes its regular trips. It is well settled that transportation by ferry across a stream from one state to another constitutes interstate commerce, and as such, where Congress has acted, is under its exclusive control. Where Congress has not acted, however, the states may exercise a measure of regulatory power not inconsistent with the federal authority and not actually burdening or interfering with interstate commerce.

The question of the authority of a state in licensing and regulating ferries across a navigable stream to an adjoining state has been before the Supreme Court a number of times. The earlier decisions have been modified by the later jurisprudence, and the extent to which a state may go in its regulatory laws is now well defined.

Fanning v. Gregoire (1853) 16 How. 524, 14 L. Ed. 1043, was one of the earliest cases. The court held that the Legislature of Iowa, in granting the plaintiff the right to establish a ferry across the Mississippi river at Dubuque, and prohibiting the county in which the city is located from granting such right to any other party, did not thereby cut itself off from granting thereafter to the city of Dubuque the right to license other ferries.

In the case of Conway v. Taylor (1861) 1 Black, 603, 17 L. Ed. 191, an exclusive franchise had been granted plaintiff by the state of Kentucky to operate a ferry across the Ohio river to the state of Ohio, and the courts of Kentucky restrained a competitor on the Ohio shore from operating his ferry from the Kentucky side back to Ohio. They recognized, however, the right of the Ohio ferry owner to carry passengers and freight from Ohio to Kentucky. This judgment was approved by the United States Supreme Court.

In Wiggins Ferry Co. v. East St. Louis (1882) 107 U. S. 365, 2 Sup. Ct. 257, 27 L. Ed. 419, the ferry company had a franchise to operate across the Mississippi river between Illinois and Missouri. The suit was to recover a license tax for the privilege of carrying on the ferry, and the Supreme Court maintained that right, referring to a passage in the opinion of Chief Justice Marshall in Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 623. In that case Chief Justice Marshall said:

"Internal commerce must be that which is wholly carried on within the limits of a state, as, where the commencement, progress, and termination of the voyage are wholly confined to the territory of the state. This branch of power includes a vast range of state legislation, such as turnpike roads, toll bridges, exclusive right to run stagewagons, auction licenses, licenses to retailers, and to hawkers and peddlers, ferries over navigable rivers and lakes, and all exclusive rights to carry goods and passengers, by land or water. All such laws must necessarily affect, to a great extent, the foreign trade, and that between the states, as well as the trade among the citizens of the same state. But, although these laws do thus affect trade and commerce with other states, Congress cannot interfere, as its power does not reach the regulation of internal trade, which resides exclusively in the states. * * * They [state inspection laws] form a portion of that immense mass of legislation, which embraces everything within the territory of a state, not surrendered to the general government, all which can be most advantageously exercised by the states themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a state, and those which respect turnpike roads, ferries, etc., are * * * parts of this mass."

The case of Gloucester Ferry Co. v. Pennsylvania (1885) 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158, first announced a contrary doctrine. In that case the

ferry company was domiciled in New Jersey and operated a ferry over the Delaware river from Camden to Philadelphia. The situs of its boats was in New Jersey, but the company owned a wharf in Philadephia. The suit was to test the validity of a tax against the corporation on the estimated value of its capital stock. The court held that a tax upon receiving and landing passengers and freight is a tax upon their transportation and upon the commerce between the two states, and the fact that the transporation was by ferry did not change the character of the business. Considering the language above quoted from Gibbons v. Ogden, the court held that Chief Justice Marshall had plainly referred to ferries entirely within the state, and not to ferries transporting passengers and freight between the states and a foreign country. The court held that such a ferry is a necessary means of commercial intercourse between the states bordering on the dividing waters, and that it therefore must be conducted without the imposition of any tax or other burdens, and the tax imposed was therefore held to be invalid.

The doctrine of the Gloucester Case was again applied in Covington & Cincinnati Bridge Co. v. Kentucky, 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962, involving a law regulating the tolls to be charged on a bridge across the Ohio river between Kentucky and Ohio. It was held that, as the bridge was over a navigable stream, the power to regulate the tolls was in Congress, and therefore the state regulation was void.

All of these cases were reviewed in St. Clair v. Interstate Sand & Car Co. (1904) 192 U. S. 454, 24 Sup. Ct. 300, 48 L. Ed. 518; Mr. Justice White having been the organ of the court. The plaintiff in that case sought to recover penalties of the defendant for operating without having obtained a license a ferry across the Mississippi river from St. Clair, in the state of Illinois, to a point opposite in the state of Missouri. It was held that, under any view which might be taken of the prior cases, they were each conclusive of the case under consideration, because none of them imposed the power in a state to directly control interstate commerce, and said Justice White:

"Conceding, arguendo, that the police power of a state extends to the establishment, regulation, and licensing of ferries on a navigable stream, being the boundary between two states, none of the cases justifies the proposition that such power embraces transportation by water across such a river which does not constitute a ferry in a strict technical sense. In that sense 'a ferry is a continuation of the highway from one side of the water over which it passes to the other, and is for transportation of passengers or of travelers with their teams and vehicles and such other property as they may carry or have with them.' Mayor, etc., of New York v. Starin, 106 N. Y. 1, 11 [12 N. E. 631, 632]."

The court, however, held that the defendant was not operating a ferry within the technical sense of the term; it being a link in the chain of transportation of railroad cars in interstate commerce. It was further stated that the power conferred upon the county was not merely to grant licenses, but to withhold them and the acceptance imposed upon the licensee the duty of carrying on a technical ferry business, to operate at designated hours, etc. However valid such a regulation might be when applied to a ferry business in its restricted sense, the court held that it was not valid in the instant case, because a direct burden on interstate commerce was made a condition precedent to doing business of that character. The court, in concluding, adds:

"Because we have, arguendo, rested our conclusion in this case upon the assumption that the respective states have the power to regulate ferries over navigable rivers constituting boundaries between states, we must not be understood as deciding that that doctrine, which undoubtedly finds support in the opinions announced in Fanning v. Gregoire and Conway v. Taylor, has not been modified by the rule subsequently laid down in the Gloucester Ferry Case and the Covington Bridge Case. As this case has not required us to enter into those considerations, we have not done so."

That this early doctrine was subsequently modified by the rule laid down in the Gloucester Ferry Case and the Covington Bridge Case is made clear by the two recent cases (1914) of Port Richmond Ferry v. Hudson County, 234 U. S. 317, 34 Sup. Ct. 821, 58 L. Ed. 1330, and City of Sault Ste. Marie v. In-

ternational Transit Co., 234 U. S. 333, 34 Sup. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574, decided the same day; Mr. Justice Hughes having been the organ of the court in both cases.

In the former case, the board of freeholders of Hudson county, N. J., under authority of the Legislature of New Jersey, by resolution established rates to be charged by the ferry which conveyed persons from Port Richmond, N. J., across the Kill von Kull to Staten Island, N. Y., and likewise rates which might be charged for round trip passage. The plaintiff contended that the action of the board was void, for the reason that the transportation was interstate and the fixing of rates therefor was a direct regulation of interstate commerce. The ferry, unlike the St. Clair Case, was not operated in connection with a railroad, and was a ferry in the technical sense of the term, so the issue was clear-cut.

The court held that the transportation of persons and property from one state to another is none the less interstate commerce because conducted by a ferry, and that whatever may be regarded as a direct burden upon interstate commerce as conducted by such ferries operating between states is beyond authority of a state to impose. The opinion cites the Gloucester Ferry Case and approvingly quotes: "The only interference of the state with the landing and receiving of passengers and freight, which is permissible, * * * is confined to such measures as will prevent confusion among the vessels, and collision between them, insure their safety and convenience, and facilitate the discharge or receipt of their passengers and freight, which fall under the general head of port regulations."

The court further quoted: "It is true that, from the earliest period in the history of the government, the states have authorized and regulated ferries, not only over waters entirely within their limits, but over water separating them; and it may be conceded that in many respects the states can more advantageously manage such interstate ferries than the general government, and that the privilege of keeping a ferry, with a right to take toll for passengers and freight, is a franchise grantable by the state, to be exercised within such limits and under such regulations as may be required for the safety, comfort, and convenience of the public. Still the fact remains that such a ferry is a means, and a necessary means, of commercial intercourse between the states bordering on their dividing waters, and it must therefore be conducted without the imposition by the states of taxes or other burdens upon the commerce between them. Freedom from such impositions does not, of course, imply exemption from reasonable charges, as compensation for the carriage of persons, in the way of tolls or fares, or from the ordinary taxation to which other property is subjected, any more than like freedom of transportation on land implies such exemption."

It was held that ferries were simply the means of transit from one shore to another, and have always been regarded as instruments of local convenience, which, for the proper protection of the public, are subject to local regulations, and that, where the ferry is conducted over a boundary stream, each jurisdiction, with regard to the ferriage from its shore, has exercised this protective power; that apart from said rules as to navigation, such ferries had not engaged the attention of Congress; that the issue involved was not one of "discriminatory requirements or burdensome exactions imposed by the state, which may be said to interfere with the guaranteed freedom of interstate intercourse or with constitutional rights of property," but merely a simple one of reasonable charges, and that, where there had been no federal action, the state might protect the public from extortionate rates.

Under this decision, then, each state may fix the rates to be charged in carrying passengers or property from its shore across the boundary stream. The court did not construe the ordinance as requiring the sale of round-trip tickets, but merely as fixing the price of such tickets when sold on the New Jersey shore, if the company should determine to sell such round-trip tickets, and, viewed as a limitation upon rates for round-trip tickets when sold in New Jersey, the court held the ordinance valid.

In the Sault Ste. Marie Case, 234 U. S. 333, 34 Sup. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574, the ordinance attacked was not merely a regulatory

ordinance or one fixing rates, but an ordinance by the city of Sault Ste. Marie requiring the payment of $50 for a license to operate a ferry across St. Mary's river to Canada. The court said: "It will be observed that the question is not simply as to the power of the state to prevent extortion and to fix reasonable ferry rates from the Michigan shore; it is not as to the validity of a mere police regulation governing the manner of conducting the business in order to secure safety and the public convenience. See Port Richmond, etc., Ferry Co. v. Board of Chosen Freeholders [234 U. S.], p. 317 [34 Sup. Ct. 821, 58 L. Ed. 1330], decided this day. The ordinance goes beyond this. The ordinance requires a municipal license; and the fundamental question is whether in the circumstances shown the state, or the city acting under its authority, may make its consent a condition precedent to the prosecution of the business. If the state, or the city, may make its consent necessary, it may withhold it. The appellee, having its domicile in Canada, is engaged in commerce between Canada and the United States. At the wharf which it leases for the purpose on the American shore, it receives and lands persons and property. Has the state of Michigan the right to make this commercial intercourse a matter of local privilege, to demand that it shall not be carried on without its permission, and to exact as the price of its consent—if it chooses to give it—the payment of a license fee? This question must be answered in the negative."

In answer to the contention that, under the early decisions cited, a state, directly or through its municipalities, may establish and license ferries, the court said: "But, since the decision in Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196 [5 Sup. Ct. 826, 29 L. Ed. 158], it has been clear that, whatever authority the state may have for this purpose, it does not go so far as to enable the state to interdict one in the position of the appellee from conducting the commerce in which it is engaged, or justify the state in imposing exactions upon that commerce in the view that business of this character may be carried on only by virtue of its consent express or implied."

The court, after noting, as held in the Gloucester Case, that transportation in ferryboats passing between states is none the less interstate commerce, concluded: "The fundamental principle involved has been applied by this court in recent decisions in a great variety of circumstances, and it must be taken to be firmly established that one otherwise enjoying full capacity for the purpose cannot be compelled to take out a local license for the mere privilege of carrying on interstate or foreign commerce."

The town of Delta, under the authority delegated to it by the state of Louisiana to license and regulate ferries, could not have required of the plaintiff the payment of a license as a condition precedent to its engaging in the ferry business. But it went further, by an ordinance granting an exclusive franchise to one party and penalizing all others who might thereafter engage in the operation of a ferry between Delta and Vicksburg. The ordinance must be held void; and Act 111 of 1912, granting to the town of Delta the authority to license and regulate ferries, and act 68 of 1896, prohibiting any person not a lessee of a public ferry to transport for hire any person across the Mississippi river or other stream in the state within a distance of two miles of any public ferry landing, in so far as such acts may be construed as authorizing the ordinance, are repugnant to the commerce clause of the federal Constitution and must be held as of no effect.

A decree will be entered, granting an interlocutory injunction as prayed for.

E. H. Randolph, of New Orleans, La., for appellants.

F. G. Hudson, Jr., of Monroe, La. (Henry & Canizaro, of Vicksburg, Miss., and Hudson, Potts, Bernstein & Sholars, of Monroe, La., on the brief), for appellees.

Before WALKER, Circuit Judge, and GRUBB, District Judge.

PER CURIAM. For reasons sufficiently stated in the opinion rendered when the court ordered the issuance of the interlocutory injunction prayed for, the decree appealed from is affirmed.