On Rehearing.
 

 BRUNOT, J.
 

 The decision rendered in this case on March 8, 1924, holds: That the ordinance complained of, which was adopted by the town council of Vidalia in 1923, did not violate the franchise granted to plaintiff'in 1902; that the council had power to make rates covering ferriage charges for transporting articles not mentioned in the franchise; that, in fixing such rates, the council acted in a legislative capacity, and therefore there was no necessity for notice to plaintiff or for a hearing contradictorily with him preliminary to fixing the rates; and that the rates fixed in the ordinance are not unreasonable.
 

 Plaintiff contends that there are four fundamental errors in the opinion, viz.: That the court erred in holding that paragraph 32 of section 15 of the Lawrason Act empowers the town council of Vidalia to fix compulsory rates for ferriage not agreed on in the, franchise; that the court erred in holding that the police power to fix rates for public utilities may result from neeessary implication; that thé court erred in holding that plaintiff, "by virtue of his franchise, enjoys a monopoly, and therefore the town of. Vidalia has the implied right to regulate the rates; and that the court erred in holding that, as the Public Service Commission was not in existence when the franchise was granted, the town of Vidalia has power to fix rates not fixed in the franchise.
 

 Plaintiff quotes from the opinion of this court the following:
 

 “The town of Vidalia is incorporated under the Lawrason Act, No. 136 of 1898, and under paragraph 32 of section 15 of that act the town had power ‘to license ferries and to regulate the same /md the landing thereof, within, the corporate limits.’ It has, therefore, control over plaintiff’s ferry, and may fix all such rates (at least) as are not fixed by the franchise.”
 

 Plaintiff contends that this expression of the court is in opposition to the views of the text-writers and to • the jurisprudence of this and other states. In support of this contention he cites Shreveport Traction Co. v. City of Shreveport, 122 La. 1, 47 So. 40, 129 Am. St. Rep. 345, and City of. Shreveport v. Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365. In the first case cited, the city attempted to compel the Shreveport Traction Company- to furnish transfers on its lines. The court held that Shreveport had not been granted the power to fix rates compulsorily, and that the traction company had a binding contract with the city by which the rates for transportation were fixed, and that this contract was inviolable. In the second cited ease, the city, under the power to regulate and make improvements to the streets, alleys, public squares, wharves, and other public property, and to provide for the lighting and watering of the same undertook to fix gas rates for the general public. The court properly held that:
 

 “The question in the present case is not as to whether the city has not had heretofore the power to fix a gas rate by agreement with the gas Company, or might not do so now; but it
 
 *355
 
 is as to whether it has thus had, and now has, the power to impose a gas rate by compulsion.”
 

 The court was considering the right of the city to fix a compulsory gas rate for the benefit of the general public, and, as the court found, that the power of the city was limited to its regulation, improvement, lighting and watering of streets, alleys, public squares, wharves, and other public property, it is manifest that the city had no power to fix compulsory rates for the benefit of private consumers of gas.
 

 In the case of City of Detroit v. Detroit Citizens’ St. Ry. Co., 184 U. S. 389, 22 S. Ct. 410, 46 L. Ed. 592, it is held that where the rate of fare has been fixed under proper authority it is not open to alteration by the council by whom the. grant has been made.
 

 We cannot see how these authorities weaken the force of the reasoning or affect, in the least, the conclusions reached in our original opinion.
 

 In Long, Mayor, v. Miller et al. (C. C. A.) 262 F. 362, and City of Sault Ste. Marie v. International Transit Co., 234 U. S. 333, 34 S. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574, the court recognizes the power of the state to prevent extortion, and to fix
 
 reasonable ferry ratesx
 
 and to enforce police regulations governing the conduct of the business of operating a ferry across a navigable stream from one state to an adjoining state. If it be conceded that the ferry between Vidalia and Natchez is an interstate transportation facility, the situation of plaintiff will not be affected thereby, because Congress and the Interstate Commerce Commission have not seen fit to act, and until they do so the power of the state is supreme.
 

 With respect to ferries, Act 202 of 1902 contains a grant of power to police juries to fix rates, except where the ferry is in the corporate limits of a town or city, and Act 136 of 1898, as amended by Act 111 of 1912, grants to municipalities the right “to license ferries and regulate the same and the landing thereof within the corporate limits.”
 

 It is not necessary to add to the clear reasoning of the court in the original opinion which led us to the conclusion:
 

 “That ferries under the control of municipalities are subject to regulation by the governing authorities of such municipalities as to all rates and tariffs not established by the franchise itself.”
 

 In State v. New Orleans, 151 La. 24, 91 So. 593, this court held that the rate-making power had been delegated by the state to the municipality in general terms; that this power had not been impaired by the Constitution of 1921; and that the power to regulate, supervise, and control included the power to make rates.
 

 In the case of Baton Rouge Water Works Co. v. La. Public Service Commission, 100 So. 710,
 
 [1]
 
 this court held that the rate-making power had been delegated to the municipality by the following words in its charter:
 

 “The council shall have power to enact all laws and ordinances necessary * * * to provide an adequate water supply.”
 

 The charter of the town of Vidalia (Act 136 of 1898), in paragraph 32 of section 15, grants to the municipality the power to “license ferries and to regulate the same and the landing thereof within the corporate limits,” and paragraph 1 of section 16 grants to the municipality the power “to fix the
 
 rate
 
 for the carriage' of persons and dray-age, cartage and transportation of property, other than by railroads operated by steam within the limits of the municipality.” This is an express grant of power to fix rates for transportation, within the corporate limits of the town, and the grant is inclusive except as to railroads operated by steam.
 

 All other questions presented in the ap
 
 *357
 
 plication for rehearing and in the brief filed in support of the application are fully and accurately disposed of in the original opinion, and a reconsideration of the case has strengthened our conviction in the correctness of the conclusions announced therein.
 

 Our original judgment is therefore reinstated and made the final judgment of the court; plaintiff, appellee, to pay costs.
 

 OVERTON, J., dissents.
 

 LAND, J., dissents for reasons assigned in dissenting opinion.
 

 [1]
 

 156 La. 539.