**183 So. 168**

## HIGGINBOTHAM v. CITY OF BATON ROUGE.

### No. 33991.

June 27, 1938.

Rehearing Denied Aug. 5, 1938.

Edward Rightor, of New Orleans, Borron, Owen & Borron, of Plaquemine, and E. R. Schowalter, of New Orleans, for appellant.

Fred G. Benton, of Baton Rouge (Payne Breazelle, of Baton Rouge, of counsel), for appellee.

O'NIELL, Chief Justice.

The plaintiff is appealing from a judgment dismissing his suit on an exception of no cause or right of action. He claims that, having been employed by the Commission Council of the City of Baton Rouge, on January 9, 1935, as Superintendent of Public Parks and Streets, for a term to continue until the next day after the first Monday in November, 1936, at a salary of $5,000 per year, he was discharged by the Commission Council, without just cause, on March 22, 1935, and was paid his salary only to the end of that month. Hence he sues for the balance of the salary that he would have earned if he had been allowed to continue in his employment to the end of his term. The amount is $7,957.76.

The facts of the case are stated completely in the plaintiff's petition. The city of Baton Rouge has a commission form of government, adopted in 1914, under the provisions of Act No. 207 of 1912. The authority of the Commission Council is divided among three departments, namely, (1) the Department of Public Health and Safety, (2) the Department of Finance, and (3) the Department of Public Parks and Streets. There is a commissioner elected for each department, the Mayor being ex officio Commissioner of Public Health and Safety. In the Act No. 207 of 1912, in section 20, all of the powers and authority conferred upon the city by its charter, being Act No. 169 of 1898, or by any other law, not inconsistent with the provisions of Act No. 207 of 1912, are declared reserved to the city, unimpaired, to be exercised by the Mayor and Commission Council elected under the provisions of the act of 1912. In Section 47 of Act No. 169 of 1898, as amended by Act No. 20 of 1921, Ex.Sess., the terms of office of the members of the Commission Council were fixed at four years, and the

date of their election was declared to be the first Tuesday in April, every four years, commencing on the first Tuesday in April, 1927. Powers Higginbotham, who is the plaintiff in this suit, was elected Commissioner of Public Parks and Streets, in the election held on the first Tuesday in April, 1931, for a term of four years, beginning on the fourth day of May, 1931, and at a salary of $5,000 per annum. He was inducted into office on the first Monday in May, 1931, for a term which was to expire on the first Monday in May, 1935. But the Legislature, by Act No. 41 of the Second Extraordinary Session of 1934, postponed the date for the election of officers of the City of Baton Rouge from the first Tuesday in April, 1935, to the Tuesday next following the first Monday in November, 1936. Thus the term of office of Powers Higginbotham as Commissioner of Public Parks and Streets was extended to the Tuesday next following the first Monday in November, 1936. But, in the Third Extraordinary Session of 1934, the Legislature adopted an act, being Act No. 13 of that session, providing a form of government for certain cities in Louisiana, and in the 4th section of the act the office of Commissioner of Public Parks and Streets for the City of Baton Rouge was abolished, and all of the authority and functions theretofore belonging to that office were transferred to the Mayor of the city. In the same section of the act the Legislature created what was termed the Department of State Coordination and Public Welfare, with authority to arrange for the facilities and services deemed necessary to be rendered by the city and the state for their mutual benefit. The statute provided for the election of a Commissioner of the Department of State Coordination and Public Welfare, at a salary of $5,000 per year, and provided that the commissioner should be appointed by the Governor until the next regular election of the Commission Council. In the same section of the act the Legislature declared that the person then holding the office of Commissioner of Public Parks and Streets, —meaning Powers Higginbotham,—should be entitled to enter the employ of the city under the Mayor, and should have the right to continue in that service during good behavior and until the next general election of the municipal officers, at the same salary that he was receiving then as Commissioner of the Department of Public Parks and Streets. That provision of the statute was in these words:

"Provided that the person now filling the office of Commissioner of the Department of Public Parks and Streets of said City shall be entitled to enter the employ of the said City of Baton Rouge, at a salary equal to that heretofore allowed by law to said person as the Commissioner of the Department of Public Parks and Streets, in the work under the said Mayor and said person shall have the right to continue in said service during good behavior until the next general election of officers in said municipality."

Act No. 13 of the Third Extraordinary Session of 1934, became effective on the 10th day of January, 1935. Accordingly, on the 9th day of January, 1935, the Commission Council adopted an ordinance de-

claring that, whereas, by Act No. 13 of the Third Extraordinary Session of 1934, the Legislature had abolished the office of Commissioner of Public Parks and Streets, and had transferred all of the authority and functions of that department to the Mayor, and at the same time had declared that the then incumbent Commissioner of Public Parks and Streets was entitled to enter the employ of the city under the Mayor, and to remain in that employment until the next municipal election, therefore, Powers Higginbotham, the then incumbent Commissioner of Public Parks and Streets, was thereby employed by the City of Baton Rouge, as Superintendent of Public Parks and Streets, under the Mayor of the city, at the same salary that he was receiving as Commissioner of Public Parks and Streets, and for the term of employment continuing during his good behavior and until the next general election of municipal officers. Mr. Higginbotham promptly accepted the employment and entered upon the discharge of his duties, with the right and intention of continuing in the employment until the Tuesday next following the first Monday in November, 1936.

The Legislature, in the First Extraordinary Session of 1935, adopted an act, being Act No. 1 of that session, amending Section 4 of Act No. 13 of the Third Extraordinary Session of 1934, so as to transfer the authority and functions of the Department of Public Parks and Streets from the Mayor to the Commissioner of the Department of State Coordination and Public Welfare, and so as to make that Commissioner, ex officio, Commissioner of

Public Parks and Streets; and, in this act of the First Extraordinary Session of 1935, the Legislature declared:

"The provision of this section [Section 4 of Act No. 13 of the Third Extraordinary Session of 1934] heretofore enacted requiring the employment of the person theretofore exercising the functions of Commissioner of the Department of Streets and Parks [shall] be and the same is hereby repealed."

Act No. 1 of the First Extraordinary Session of 1935 went into effect on the 22nd day of March, 1935. On that day the Commission Council for the City of Baton Rouge, recognizing that the employment of Powers Higginbotham was terminated by Act No. 1 of the First Extraordinary Session of 1935, adopted an ordinance declaring that the city was then without authority to retain Mr. Higginbotham in his employment, and hence, that the employment was at an end. He was paid his salary to the end of that month.

The plaintiff's contention is that Act No. 1 of the First Extraordinary Session of 1935 cannot have the effect of destroying the contract of employment between him and the City of Baton Rouge, because that would be violative of Section 15 of Article 4 of the Constitution of Louisiana, forbidding the Legislature to pass any law impairing the obligation of a contract, and would be violative of Section 10 of Article 1 of the Constitution of the United States, U.S.C.A.Const. art. 1, § 10, forbidding the States to pass any law impairing the obligation of a contract. Hence the plaintiff contends that the Commission

Council discharged him without just cause, before the expiration of his term of employment, and therefore, under the provisions of article 2749 of the Civil Code, the city is obliged to pay him the balance of the salary that he would have earned if he had been allowed to serve to the end of his term of employment. The plaintiff relies mainly upon the doctrine of the decision in Hall v. Wisconsin, 103 U.S. 5, 13 Otto 5, 26 L.Ed. 302. The City of Baton Rouge, on the other hand, relies upon the decision in Newton v. Board of Commissioners of Mahoning County, Ohio, 100 U.S. 548, 25 L.Ed 710. Our opinion is that the present case is governed by the doctrine of Newton v. Board of Commissioners, and not by the decision in Hall v. Wisconsin. The position in which Powers Higginbotham was employed was in the nature of a public office, in that the duties and functions of the employee were governmental or administrative duties and functions. In Hall v. Wisconsin, the contract that was declared to be within the protection of Section 10 of Article 1 of the Constitution of the United States was a contract to make a geological, mineralogical and agricultural survey of the State. In the opinion rendered in the case it was said, with reference to the so-called "commissioners" employed by the Governor to do the work, "Their duties were specifically defined, and were all of a scientific character." The duties or functions of the employees—called commissioners—were not governmental or administrative duties or functions, in any sense. They were just such functions or duties as the surveyors or commissioners would have had

to perform if their contract had been made with an individual or with a private corporation, instead of the State.

In Newton v. Board of Commissioners of Mahoning County it was held that the contract clause in the Constitution had application only to cases where the State laid aside her sovereignty and entered into a contract such as an individual might enter into. The author of the opinion in that case quoted from Chief Justice Marshall's opinion in the Dartmouth College Case,—Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629,—in support of the proposition that the contract clause in the Constitution has no application where the statute in question is a public law having reference to the general welfare. And the author of the opinion in the Newton Case distinguished that case from the Dartmouth College Case, thus (100 U.S. page 557):

"The principle there laid down [in the Dartmouth College Case], and since maintained in the cases which have followed and [have] been controlled by it, has no application where the statute in question is a public law relating to a public subject within the domain of the general legislative power of the State, and involving the public rights and public welfare of the entire community affected by it."

Counsel for the appellant in this case cite the following cases decided by this court: State v. Judge Bermudez, 12 La. 352; Reynolds v. Baldwin, 1 La.Ann. 162; State ex rel. Henry v. Mayor and Administrators of City of New Orleans, 29 La.

Ann. 863; New Orleans Canal & Banking Company v. City of New Orleans, 30 La.Ann. 1371; and Shreveport Traction Co. v. City of Shreveport, 122 La. 1, 47 So. 40, 129 Am.St.Rep. 345. These decisions merely restate the prohibition in the Constitution, that the Legislature is forbidden to enact any law impairing the obligation of a contract. None of the cases cited is quite like the present case in point of fact. With regard to the case of Shreveport Traction Co. v. City of Shreveport, we observe that, in State v. City of New Orleans, presenting the same question, 151 La. 24, 31, 91 So. 533, 536, the court referred to the Shreveport Traction Company's Case thus:

"The Attorney General cites the decision in Shreveport Traction Co. v. City of Shreveport, 122 La. 1, 47 So. 40, 129 Am.St.Rep. 345, as being opposed to the doctrine stated; but the decision upon which the expression in that case was founded (Detroit v. Detroit Citizens' Street R. Co., 184 U.S. 368, 22 S.Ct. 410, 46 L.Ed. 592), was not appropriate, as is explained in Milwaukee Electric Ry. & Light Co. v. Railroad Commission, 238 U. S. 174, 181, 35 S.Ct. 820, 59 L.Ed. 1254."

 The reason why the contract clause in the Constitution is not applicable to contracts of employment of persons to perform governmental functions is that the Legislature is forbidden to make an irrevocable surrender of any of the police power of the State. It is so declared in Section 18 of Article 19 of the Constitution of Louisiana,—thus: "The exercise of the police power of the State shall never be

abridged." Hence the contract clause in the Constitution does not interfere with the authority of the Legislature to repeal at any time any law under which an individual has been employed to perform governmental functions, and, by such repeal, to put an end to the contract of employment.

 The reason why the Commission Council employed Mr. Higginbotham to serve as Superintendent of Public Parks and Streets until the next general election of the municipal officers,—as stated in the ordinance dated January 9, 1935,—was that, by the provisions of Act No. 13 of the Third Extraordinary Session of 1934, Mr. Higginbotham had "the right to continue in said office during good behavior and until the next regular municipal election." Section 4.

The question whether that provision in Act No. 13 of the Third Extraordinary Session of 1934 might have been deemed unconstitutional, on the ground that the appointing of a particular individual to fill a particular office or position is not a legislative function, did not arise, because both the city and Mr. Higginbotham acquiesced in that provision of the statute. But, when that provision of the statute was repealed, by Act No. 1 of the First Extraordinary Session of 1935, the Commission Council was permitted—if not obliged—to discontinue the employment of Mr. Higginbotham. In fact, by the terms of Act No. 1 of the First Extraordinary Session of 1935, all of the governmental functions that were exercised originally by the Commissioner of Public Parks and

Streets, under the provisions of Act No. 207 of 1912,—and that were transferred to the office of the Mayor by the provisions of Section 4 of Act No. 13 of the Third Extraordinary Session of 1934,—were transferred to the office of the Commissioner of the Department of State Coordination and Public Welfare. And it was because of this final transfer, of the functions and authority that belonged originally to the Department of Public Parks and Streets, that the Legislature, in Act No. 1 of the First Extraordinary Session of 1935, emphatically repealed the provision in Section 4 of Act No. 13 of the Third Extraordinary Session of 1934 "requiring the employment of the person theretofore exercising the functions of Commissioner of the Department of Streets and Parks."

Conceding, however, for the sake of argument, that the amendment of Section 4 of Act No. 13 of the Third Extraordinary Session of 1934, by Act No. 1 of the First Extraordinary Session of 1935, did not of itself put an end to the employment of Mr. Higginbotham as Superintendent of Public Parks and Streets, the Act No. 1 of the First Extraordinary Session of 1935 certainly had the effect of permitting the Commission Council of the City of Baton Rouge to put an end to the employment. By the provisions of Section 20 of Act No. 207 of 1912, all of the powers and authority that were conferred by the original charter of any city that afterwards adopted the commission form of government were reserved to the city, to be exercised by the mayor and council selected under the provisions of the act of 1912. In Section 7 of the charter of the City of Baton Rouge . (Act No. 169 of 1898) it is provided that the "employees" of the city are removable as thereinafter specified. In Section 52 of the act, as amended by Act No. 249 of 1914, § 4, it is declared: "All officers elected by the Council shall be removable by the Council at pleasure." In Section 8 of Act No. 207 of 1912, it is declared that any official or assistant elected or appointed by the commission council may be removed from office at any time by a vote of the majority of the members of the council, except as herein otherwise provided. There is no exception, elsewhere in the statute, that might be applicable to this case. This general rule, that a municipal council may remove at any time any official appointed or elected by the council, or anyone employed by the council to perform governmental functions, was recognized in the case of Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822.

In State ex rel. Loeb, Mayor of Opelousas, v. Jordan, 149 La. 312, 313, 89 So. 15, the defendant, Jordan, who was employed for a fixed term, by the municipal council, as superintendent of the electric light and waterworks plant, at a stated salary, was discharged before the expiration of his term of employment, for cause, but without being given a hearing, such as he was entitled to under an ordinance of the city. He refused to surrender his position, and the mayor brought injunction proceedings against him. The judge of the district court gave judgment against Jordan, on the pleadings, declaring him discharged from his employment, and en-

joining him from interfering with the management or superintendence of the electric light and waterworks plant. On appeal the judgment was reversed. We observed, in rendering our opinion in the case, that the theory on which the judge of the district court decided the case as he did, on the pleadings, was that Jordan's only recourse was to sue the city, under the provisions of article 2749 of the Civil Code, for the unpaid balance of the salary that he would have earned if he had been allowed to continue in his employment to the end of the term for which he was employed. But we held that Jordan's position or employment, as superintendent of the electric light and waterworks plant, was of the character of a municipal office, and hence we held that article 2749 of the Civil Code was not applicable to such an employee.

■ A suit brought by a discharged employee, claiming that he was discharged without cause, before the expiration of the term for which he was employed, and claiming, therefore, under authority of article 2749 of the Civil Code, the balance of the salary that he would have earned if he had been allowed to serve to the end of his term of employment, is, in its very nature, an action for damages for breach of contract. There is no good reason why the City of Baton Rouge, in this case, should be held liable in damages for the alleged breach of a contract of employment which the city was compelled by an act of the Legislature to consent to, and which the city was compelled by another act of the Legislature to put an end to. Our conclusion, therefore, is that the judgment appealed from is correct.

**The judgment is affirmed.**